# GREATER YELLOWSTONE COALITION, INC., a Nonprofit Corporation, and GALLATIN WILDLIFE ASSOCIATION, INC., a Nonprofit Corporation, Plaintiffs and Respondents,

### v.

# THE BOARD OF COUNTY COMMISSIONERS OF GALLATIN COUNTY, Defendant and Appellant, and DUCK CREEK PROPERTIES, a Florida general partnership, Defendant, Intervenor, and Appellant.

No. 00-468.
Submitted on Briefs December 21, 2000.
Decided June 7, 2001.
2001 MT 99.
305 Mont. 232.
25 P.3d 168.

For Appellants: **Michael J. Lilly**, Berg, Lilly & Tollefsen, P.C., Bozeman (Duck Creek Properties, Inc.); **Susan B. Swimley**, Attorney at Law, Bozeman (Board of County Commissioners of Gallatin County).

For Respondents: **Richard J. Dolan**, Attorney at Law, Bozeman.

JUSTICE TRIEWEILER delivered the Opinion of the Court.

¶1 The Plaintiffs, Greater Yellowstone Coalition and Gallatin Wildlife Association, brought this action in the District Court for the Eighteenth Judicial District in Gallatin County to set aside the Gallatin County Commissioners' decision to amend the zoning designation of real property owned by Duck Creek Properties. The District Court concluded that the zoning amendment was illegal spot zoning and voided the County Commissioners' zoning amendment resolution. The Gallatin County Commissioners and Duck Creek Properties appeal from the judgment of the District Court. We affirm the District Court.

¶2 The sole issue presented on appeal is whether the District Court erred when it concluded that the Commissioners' zoning resolution constituted illegal spot zoning.

FACTUAL BACKGROUND

¶3 Duck Creek Properties, a Florida general partnership, owns 323 acres of undeveloped land in the Hebgen Lake Zoning District in Gallatin County, Montana. The Zoning District, which was established by the Gallatin County Commissioners as part of an overall development plan, consists of 13,280 acres of land—5,444.8 acres (about 41%) privately owned and 7,835.2 acres (59%) owned by the public.

¶4 The Zoning District Ordinance established several zoning classifications for private property. The Land Use Map for the District originally designated the Duck Creek property as residential, limited to one single family unit per 10 acres (R-10). The R-10 zoning classification would have permitted a maximum 32 single family residences on the 323 acre parcel. However, Duck Creek Properties requested a zoning change from R-10 to Planned Unit Development (PUD), which permits more diverse uses at much higher densities. The reason given for pursuing the zoning change was to increase the development options and value of the property.

¶5 PUD designation permits any and all of the 23 uses set forth in section 14.2 of the Zoning Regulations for the Zoning District. These permitted uses include agriculture, bars, gasoline service stations,

home occupations, laundromats, motels, multi-family dwellings, recreational facilities (golf courses, club houses, tennis courts, swimming pools, ski facilities), restaurants, retail stores, signs, single family dwellings, RV parks, storage unit facilities, guest houses, fire stations, marinas, and guest ranches. PUD zoning for the Duck Creek parcel would permit a maximum density of 969 single family residences or 1,615 multi-family residences or a combination of each. PUD zoning also requires that 35% of the land be dedicated to open space.

¶6   No commercial development currently exists on the Duck Creek parcel. The only commercial development in the area is Eino's Bar and a home taxidermy business located across Highway 191, which borders Duck Creek's properties on the west. To the east of Duck Creek is a narrow section of United States Forest Service land. Immediately to the east of that property is Yellowstone National Park.

¶7   On the southern side of Duck Creek are five residences that were developed before adoption of the Hebgen Lake Comprehensive Plan. These residences are on land zoned as COS-X, Existing Residential Certificate of Survey. A Montana Department of Highways facility is also located in this COS-X district. COS-X zoning permits limited development including: accessory uses, home occupations, signs, single family dwellings on each existing lot, temporary buildings for construction, and agriculture.

¶8   Eino's Bar, across Highway 191 from the Duck Creek parcel, sits on a small triangle of land zoned for commercial establishments. A small log home building operation and a State Highway gravel pit are across Highway 191 to the southwest of the Duck Creek parcel on land zoned for Resource Development District (RD). RD zoned areas permit timber growing and harvesting, agriculture, grazing, livestock breeding, and hunting on the premises.

¶9   The property to the north of the Duck Creek parcel is owned by the United States Forest Service. A cemetery on Forest Service land borders the Duck Creek parcel on the north side.

¶10 The property across Highway 191 to the northwest of the Duck Creek parcel is zoned Existing Residential (RX), which is intended to provide for residential buildings on lots within existing subdivisions recorded prior to adoption of zoning regulations. The RX zoning designation permits accessory uses, home occupations, signs, and one single family dwelling per existing lot. The taxidermy business is in a home within the RX district.

¶11 Finally, the property that borders Duck Creek to the northeast is

zoned Residential District (R-10). This R-10 district is the only property in the neighborhood with the same zoning designation as Duck Creek.

¶12 The area around the Duck Creek parcel contains important wildlife habitat. The northern portion of the parcel along Fir Ridge serves as a corridor for grizzly bears traveling between Yellowstone National Park and the Madison Range. Evidence in the record estimates that 16 grizzly bears use the Duck Creek parcel as part of their habitat and another 17 grizzly bears have been found in adjacent habitat. These bears represent approximately 10% of the entire grizzly population in the Greater Yellowstone area. Elk, moose, and bison from Yellowstone National Park use the area in and around Duck Creek for winter range. Duck Creek itself is important trout habitat. Testimony indicated that increased density in development on the Duck Creek parcel will displace wildlife, affect habitat, lead to an increase in human-wildlife conflict, and degrade the water quality in Duck Creek.

¶13 The Hebgen Lake Development Plan lists six goals and objectives. The first goal of the Development Plan is stated as follows: "[s]cenic beauties and the natural environment are the greatest resources of the area and should be protected to the fullest extent possible while yet allowing a minimal amount of development." Goal No. 2 recognizes the need to protect wildlife habitat. Goal No. 4 restricts commercial development to a few key locations in the District and encourages meeting future needs by expanding the size of existing commercial locations rather than zoning new commercial locations.

¶14 Duck Creek Properties first presented its rezone request on June 14, 1996, to the Hebgen Lake Zoning Advisory Committee, a committee of citizens within the District that reviews applications and forwards recommendations to the Hebgen Lake Zoning Commission. The Advisory Committee voted 3-2 to recommend to the Zoning Commission that the requested zone change be granted.

¶15 The Hebgen Lake Zoning Commission considered the rezone request on August 15, 1996. The Zoning Commission has the statutory authority to administer Hebgen Lake Zoning Regulations and forward recommendations regarding changes in zoning regulations to the Gallatin County Commissioners. The Zoning Commission is comprised of all 3 Gallatin County Commissioners, the Gallatin County Treasurer, and the Gallatin County Clerk and Recorder.

¶16 At the August 15, 1996, meeting, Duck Creek Properties presented a "preliminary concept plan." The preliminary development

plans for the Duck Creek parcel included an 18-hole golf course, approximately 10 acres of commercial development, 11 acres of multi-family development, and 65 acres of single-family development. Following public comment, the Hebgen Lake Zoning Commission voted 2-1 in favor of the proposed rezone. Two of the five members of the Zoning Commission abstained. Following approval of the PUD, however, Duck Creek Properties was not limited to the development proposed in the concept plan. It was free to apply for approval of any development permitted pursuant to a PUD designation.

¶17 The Zoning Commission recommendation was then forwarded to the Gallatin County Commission. The County Commission considered the proposed zone change on September 10, 1996. No additional public comment was heard. The measure was approved 2-0, with the same two Gallatin County Commissioners who had participated in the Zoning Commission voting in favor of the zone change and one County Commissioner abstaining.

¶18 GYA and GWC then filed this lawsuit to challenge the validity of Gallatin County Resolution 1996-55. Following a trial, the District Court voided the resolution as illegal spot zoning. The County Commission and Duck Creek Properties now appeal the District Court's decision.

## DISCUSSION

¶19 Did the District Court err when it concluded that the Commissioners' zoning resolution constituted illegal spot zoning?

¶20 We review a district court's findings of fact to determine whether they are clearly erroneous. *State v. Wooster*, 1999 MT 22, ¶ 2, 293 Mont. 195, ¶ 2, 974 P.2d 640, ¶ 2. We review a district court's conclusions of law to determine whether the interpretation is correct. *Cenex Pipeline L.L.C. v. Fly Creek Angus, Inc.*, 1998 MT 334, ¶ 22, 292 Mont. 300, ¶ 22, 971 P.2d 781, ¶ 22.

¶21 This appeal concerns the District Court's conclusion that the County Commission engaged in illegal spot zoning. We adopted a three-part test for spot zoning in *Little v. Board of County Commissioners* (1981), 193 Mont. 334, 631 P.2d 1282. That test, which was correctly applied by the District Court, is as follows:

1. Whether the requested use is significantly different from the prevailing use in the area;
2. Whether the area in which the requested use is to apply is small, although not solely in physical size. An important inquiry under this factor is how many separate landowners will benefit

from the zone classification;

3. Whether the requested change is more in the nature of special legislation designed to benefit one or a few landowners at the expense of the surrounding landowners or general public. Under the third factor for spot zoning, the inquiry should also involve whether the requested use is in accord with a comprehensive plan.

*See Little*, 193 Mont. at 346-47, 631 P.2d at 1289-90.

Since the parties agree that *Little* correctly states the applicable law, the Appellants essentially seek review of factual determinations by the District Court. However, if substantial evidence supports the District Court's findings and they are not otherwise clearly erroneous, we will not substitute our judgment for the trier of fact.

*1. Adjoining Land Use*

¶22 Addressing the first prong of the *Little* test, the District Court concluded that the density and uses allowed as a PUD zoned parcel "differs significantly from the R-10 zoning designation and from prevailing rural residential use in the area." Appellants contend that the District Court erred in reaching this conclusion. Appellants argue that the District Court erroneously compared the existing use of the R-10 zoned parcel to the proposed use as a PUD parcel rather than comparing the proposed use to usage in the neighborhood. Next, the Appellants contend that the District Court erred in comparing the potential increased densities and potential level of commercial development as a PUD parcel to the prevailing uses in the area.

¶23 We agree that the *Little* test specifically requires courts to compare the requested land use with the "prevailing use in the area." *Little*, 193 Mont. at 346, 631 P.2d at 1289. However, prevailing use need not exclude the existing use. Furthermore, the District Court also determined that PUD designation would conflict with the predominantly rural and residential character of the surrounding properties. The District Court found that:

Duck Creek's 323 acre parcel sits in a rural area and is presently undeveloped. The property is bordered along the southern property line by Duck Creek and an existing residential area. A narrow section of National Forest Service land separates the eastern boundary of the property from Yellowstone National Park. Highway 191 forms the western boundary of the property.

¶24 The District Court further explained how permitted use pursuant to the proposed PUD classification differed from prevailing uses on surrounding properties. The District Court's findings were supported

by the testimony of planning experts Lee Nellis and Keith Swenson.

¶25 We also disagree with the assertion that the District Court impermissibly speculated when it examined the potential for development at increased densities if the parcel was zoned PUD. Testimony at trial demonstrated that once the parcel was rezoned, the developer would be free to submit any development proposal allowed on a PUD zoned parcel for later approval by the Gallatin County Commission. Testimony further demonstrated that PUD designation allows for a much broader range of development rights at greater densities than the R-10 designation. In fact, the owner of the Duck Creek parcel admitted that he wanted to rezone in order to increase the value of and development options on the property. The "preliminary concept plan" Duck Creek Properties presented to the Zoning Commission at the August 15, 1996 hearing included an 18-hole golf course, approximately 10 acres of commercial development, 11 acres of multi-family development, and 65 acres of single family development. In contrast, R-10 zoning classification would have allowed a maximum 32 single family residences on the 323 acre parcel. Finally, the Gallatin County Planning Staff Report instructed the Zoning Commission and the County Commission to consider the "allowable number of residential units which could be built within the 323 acre property." Therefore, the District Court properly considered the higher density uses available if the property is rezoned PUD; its finding that PUD designation conflicted with prevailing land use in the area was supported by substantial credible evidence, and we conclude that it was not clearly erroneous.

*2. Size*

¶26 The second prong of the *Little* test for spot zoning focuses on the size of the area in which the requested use is to apply, but is not limited to the physical size of the parcel. It also includes analysis of how many separate landowners stand to benefit from the proposed zoning change. The District Court found that the Duck Creek parcel was small in relation to the Hebgen Lake Zoning District—the 323 acres at issue comprise a mere 2% of the District's 13,280 acres. The District Court further found that the Duck Creek parcel was owned by a single entity.

¶27 Duck Creek Properties admits that the property is owned by one individual but points to other instances where this Court held that the rezoning of parcels owned by a single owner was not spot zoning. This contention, however, only establishes that zone changes for property owned by one person are not *always* spot zoning pursuant to the *Little*

test.

¶28 More importantly, the *Little* test focuses on the number of owners who stand to benefit from the zoning change. *Little*, 193 Mont. at 346, 631 P.2d at 1289. It is undisputed that the parcel in question is owned by one owner–Duck Creek Properties. Furthermore, it is undisputed that Duck Creek Properties requested a rezone in order to increase the development options on and value of the property. Finally, the Plaintiffs' land use planning expert testified that only one landowner, Duck Creek Properties, benefitted from the rezone. Consequently, we conclude that the District Court's findings regarding the size of the area in question are not clearly erroneous and it's conclusion that those findings satisfy the second prong of the *Little* test is correct.

*3. Special Legislation*

¶29 The issue presented by the third prong is whether the zoning request is in the nature of special legislation designed to benefit one or a few landowners at the expense of surrounding landowners or the general public. *Little*, 193 Mont. at 346, 631 P.2d at1289. This inquiry should include an evaluation of whether the requested use is consistent with the comprehensive land use plan for the area. *Little*, 193 Mont. at 347, 631 P.2d at 1290.

¶30 The Appellants contend that the zone change will not be permitted at the expense of the general public or the surrounding landowners. Moreover, the Appellants argue that the District Court's conclusion that the zone change harmed the general public ignored the findings of the Advisory Committee, Zoning Commission, and Gallatin County Commissioners, which found "that PUD designation met the general welfare, public necessity and convenience by providing for the protection of wildlife, fire protection, weed control and water and sewer."

¶31 However, the District Court held its own evidentiary hearing and found that the "extremely sensitive nature of the Duck Creek parcel and its importance to wildlife and wildlife habitat ... is a significant factor to be weighed in evaluating the public welfare, convenience and necessity." We conclude that substantial evidence supports the District Court's finding that the proposed zone change benefitted Duck Creek Properties at the expense of the surrounding landowners and the general public, and that its finding is not clearly erroneous.

¶32 The evidence is clear that the proposed zone change benefitted one landowner, Duck Creek Properties. In addition, several parties testified that the proposed benefit to Duck Creek Properties would come at great cost to the surrounding landowners and the general

public. The largest and most significant surrounding landowner is the general public–59% of the Hebgen Lake Zoning District is public land. The area immediately surrounding the Duck Creek parcel is predominantly public land and includes some of the most significant wildlife habitat in the country.

¶33 Officials from those agencies managing that habitat for the general public opposed the rezone. The Assistant Superintendent of Yellowstone National Park submitted a letter on behalf of the park which outlined the deleterious effects the rezone would have on the public lands and resources. The Montana Department of Fish, Wildlife and Parks submitted written comments which expressed concern about the pressure the rezone would put on grizzly bear habitat. An official from the National Forest Service, when asked by the Zoning Commission what his reaction would be if the parcel was developed with the number of residential units allowed by the PUD designation, said that he would "have a heart attack." Wildlife biologist Dr. Lance Craighead testified that developed property east of Highway 191, such as the Duck Creek parcel, will deprive wildlife of crucial habitat. Dr. Craighead further testified that regardless of how PUD development was configured, the increased human density would have a negative effect on the significant portion of the Greater Yellowstone area's grizzly bears which reside in and around the Duck Creek parcel. Finally, Dr. Craighead noted the negative impacts the rezone would have on elk, bison, moose, and trout.

¶34 These concerns were shared by members of the general public who spoke at the June 14, 1996 Advisory Committee and August 15, 1996 Zoning Commission meetings, as well as those who submitted written comments. Therefore, the record contains substantial evidence that the general public, including the general public living in the area, would be adversely affected by the proposed change in zoning. We conclude that the District Court's findings to that effect were not clearly erroneous.

¶35 The Appellants also argue that the District Court erred when it found that the proposed rezone was in conflict with the comprehensive land use plan. However, we also conclude that substantial evidence supports this finding and that it was not clearly erroneous. The first goal and objective of the Hebgen Lake Development Plan states that the scenic beauties and the natural environment are the greatest resources and "should be protected to the fullest extent possible while yet allowing a minimal amount of development." The District Court found that the diverse and dense usage permitted by the proposed

PUD classification was in conflict with the goal of protecting the natural environment to the fullest extent possible and allowing only minimal development. The testimony of the Plaintiffs' experts supported that finding and conclusion.

¶36 The District Court also found that PUD classification would conflict with Goal No. 4 of the Development Plan. Goal No. 4 restricts commercial development to a few key locations in the District. The Duck Creek property is not among those locations. The PUD classification permits commercial development in an area which is otherwise without significant commercial development. The only existing commercial development in the area is the bar and taxidermy business.

¶37 ■ We conclude that the District Court did not err when, based on its findings, it concluded that the PUD zoning request represented special legislation designed to benefit one landowner at the expense of surrounding landowners and the general public. Based on its findings, which are fully supported by the evidence, the District Court correctly concluded, pursuant to the three prong *Little* test, that the zoning amendment constituted illegal spot zoning. Accordingly, we affirm the judgment of the District Court.

CHIEF JUSTICE GRAY, JUSTICES NELSON and REGNIER concur.