No. 01-336

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 301N

IN THE MATTER OF

THE ESTATE OF

LEONARD D. HASH,

Deceased.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Roy W. Johnson, Billings, Montana

For Respondent:

Carl A. Hatch, Small, Hatch, Doubek & Pyfer, Helena, Montana

Submitted on Briefs: December 6, 2001
Decided: December 28, 2001

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Carol Hash, Leonard Hash's wife and the personal representative of his estate, appeals from a judgment of the District Court for the Thirteenth Judicial District, Yellowstone County, approving a creditor's claim in the estate proceeding.

¶3 Carol raises two issues on appeal which we have restated for clarity as follows:

¶4 1. Whether a probate completed in the Superior Court of the State of Washington, King County, is entitled to full faith and credit in Montana.

¶5 2. Whether the testimony of grandchildren as to an oral agreement between one of their parents and a grandparent regarding a disclaimed interest in an estate in exchange for a lifetime care agreement, is admissible.

## Factual and Procedural Background

¶6 On September 1, 1996, Leonard's sister, Jean Helen Zimmerle, died intestate. Jean resided in King County, Washington prior to her death. Jean had no surviving spouse or children, therefore, under Washington probate law, her mother, Goldie Hash, was her sole beneficiary. Goldie also had priority to be appointed as the personal representative of Jean's estate.

¶7 Goldie was 83 years old at the time of Jean's death, so she declined to serve as personal representative. Instead, Goldie consented to have her son, Leonard, appointed as personal representative in her place. Consequently, on September 12, 1996, Leonard petitioned the

Superior Court of the State of Washington, King County, for letters of administration. He set forth in his petition that the distributive share of Jean's estate in favor of Goldie was 100%.

¶8 On October 1, 1996, Goldie, who resided alone in Livingston, had a serious fall in which she shattered her shoulder. Leonard moved Goldie into his home in Billings so that he could care for her. In addition, arrangements were made to remove Goldie's belongings from her home in Livingston so that the home could be sold. On October 15, 1996, Goldie disclaimed, in favor of Leonard, her right to receive her inheritance from Jean's estate.

¶9 Leonard passed away suddenly on May 2, 1997. Carol petitioned to be appointed the successor personal representative of Jean's estate and she was so appointed on June 5, 1997. The assets of Jean's estate were subsequently distributed to Leonard's estate and thereby to Carol. On July 28, 1997, probate was closed. Jean's estate totaled more than $150,000, of which Carol claimed she received only $104,000.

¶10 After Leonard's death, Carol and Goldie had a disagreement over finances. On July 3, 1997, Carol had Leonard's three children from his previous marriage, Connie Giddings, Tina Hash, and Dan Hash, remove Goldie from Leonard's and Carol's home. Goldie lived with Tina until December 1997, when Goldie moved into an independent retirement facility in Helena.

¶11 On November 7, 1997, Goldie filed a claim against Leonard's estate. She alleged that she had disclaimed her rights to any share in Jean's estate in favor of Leonard upon the understanding that Leonard would provide for her for the remainder of her life. As personal representative of Leonard's estate, Carol rejected Goldie's claim. Thereafter, Goldie petitioned the District Court to allow her claim.

¶12 Goldie passed away in September 1999 and Connie, Tina and Dan acted as personal representatives for her estate. The expenses for Goldie's care from the time she was removed from Leonard's and Carol's home until the time of her death amounted to $61,979. This included her rent at the retirement home, her medical care and drugs, and the cost of her funeral.

¶13 On September 13, 2000, the District Court held a hearing on Goldie's claim. At that hearing Connie and Tina both testified that it was their understanding that Goldie was to live with and be provided for by their father until she passed away.

¶14 The District Court entered its Findings of Fact and Conclusions of Law on February 23, 2001, allowing Goldie's claim. On March 6, 2001, the court entered judgment to that effect. It is from that judgment that Carol appeals.

## Issue 1.

¶15 *Whether a probate completed in the Superior Court of the State of Washington, King County, is entitled to full faith and credit in Montana.*

¶16 Carol argues on appeal that the decision of the probate court of the State of Washington to transfer the assets from Jean's estate to Leonard, is entitled to full faith and credit in Montana. Although this is a correct statement of the law, it is not the question at issue here.

¶17 The Washington probate proceeding did not address the issue raised by Goldie in the Montana probate proceeding that Goldie disclaimed her interest in Jean's estate in exchange for Leonard's promise to care for Goldie and make a home for her with him for the rest of her life. "That only is deemed to have been adjudged in a former judgment which appears upon its face to have been so adjudged or which was actually and necessarily included therein or necessary thereto." Section 26-3-102, MCA.

¶18 The adjudication by the Washington court that Leonard was entitled to receive the assets of Jean's estate was not an adjudication that Goldie cannot recover from Leonard's estate for the promise that Leonard made to take care of and provide a home for Goldie. Hence, since the Washington court did not adjudicate this issue, there is no full faith and credit preclusion.

## Issue 2.

¶19 *Whether the testimony of grandchildren as to an oral agreement between one of their parents and a grandparent regarding a disclaimed interest in an estate in exchange for a lifetime care agreement, is admissible.*

¶20 The District Court found that, but for the agreement between Leonard and Goldie that Leonard would care for and provide for Goldie for the rest of her life, Goldie's disclaimer of Jean's estate was contrary to Goldie's pecuniary interests. Thus, the court concluded that the testimony of Goldie's granddaughters as to the agreement between Goldie and their

father and Goldie's verified claim explaining the reason for her disclaimer of any interest in Jean's estate were admissible.

¶21 We review a district court's findings of fact to determine whether they are clearly erroneous. *Greater Yellowstone Coalition, Inc. v. Bd. of County Com'rs of Gallatin County*, 2001 MT 99, ¶ 20, 305 Mont. 232, ¶ 20, 25 P.3d 168, ¶ 20 (citing *State v. Wooster*, 1999 MT 22, ¶ 2, 293 Mont. 195, ¶ 2, 974 P.2d 640, ¶ 2). We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *Greater Yellowstone*, ¶ 20 (citing *Cenex Pipeline LLC v. Fly Creek Angus, Inc.*, 1998 MT 334, ¶ 22, 292 Mont. 300, ¶ 22, 971 P.2d 781, ¶ 22).

¶22 In her claim against Leonard's estate, Goldie, upon her oath, stated:

> Goldie M. Hash claims that all the assets received by Leonard D. Hash and the Estate of Leonard D. Hash from the Estate of Jean Helen Zimmerle must be used to provide a home for her and to care for her for the remainder of her life to fulfill the promises made by Leonard D. Hash in consideration for her waiver and declination to serve as personal representative and her disclaimer to receive any assets from the Estate of Jean Helen Zimmerle.

In addition, Tina testified at the hearing in this matter that "[m]y dad told me that she had given him control of my aunt's estate . . . . My grandmother depended on him and she knew that he would take care of things and also make sure that she was looked after. That was my dad's big concern in life, that his mother was taken care of."

¶23 Both Leonard and Goldie are unavailable as witnesses because they are both deceased. *See* Rule 804(a)(4), M.R.Evid. However, the Montana Rules of Evidence provide several exceptions to the hearsay rule when the declarant is unavailable as a witness. In particular for our purposes here, the following rule applies:

> **Statement against interest.** A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest . . . that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true.

Rule 804(b)(3), M.R.Evid.

¶24 We conclude that Goldie's disclaimer of Jean's estate was contrary to Goldie's pecuniary interests and that she would not have disclaimed her interest in Jean's estate unless she believed that Leonard intended to care for and provide for her for the rest of her life.

¶25 Accordingly, we hold that the District Court did not err in admitting the testimony of Goldie's granddaughters or Goldie's statement made under oath in her claim against Leonard's estate.

¶26 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ PATRICIA COTTER

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART