DA 07-0659

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2009 MT 322

LAKE COUNTY FIRST, a Montana non-profit
corporation, GREG HERTZ, MEREDITH B.
POLLACK, DONALD C. POLLACK, MARION
H. ROSA, PETER W. STONE, DICK MOLENDA,
STANLEY PETERSEN, DOROTHY L. PETERSON,
DOES 1 through 100, individuals,

        Plaintiffs and Appellants,

    v.

POLSON CITY COUNCIL, MARK MACDONALD,
BRUCE AGRELLA, TOM JONES, MIKE LIES, FRED
FUNKE and TOM CORSE, in their capacity as
Councilpersons of the Polson City Council;
JULES CLAVADETSCHER, as Mayor of the City
of Polson and as former Councilperson of the
Polson City Council; WAL-MART STORES, INC.,
a corporation; WAL-MART REALTY COMPANY, a
corporation; DOES 1 through 10, individuals,
corporations, and political subdivisions,

        Defendants and Appellees.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                In and For the County of Lake, Cause No. DV 06-173
                Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Martin S. King; Worden Thane, P.C.; Missoula, Montana

        For Appellees:

                Alan L. Joscelyn, Dennis R. Lopach, Jeffrey M. Hindoien; Gough,
                Shanahan, Johnson, & Waterman; Helena, Montana
                (Attorneys for Wal-Mart)

James Raymond; Raymond Law Office PLLP; Polson, Montana
(Attorney for City of Polson)

Submitted on Briefs:  November 6, 2008

Decided:  September 29, 2009

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Defendants Wal-Mart Stores, Inc. and Wal-Mart Realty Company (collectively "Wal-Mart") applied for a zoning change and annexation of property into the City of Polson. Wal-Mart requested that the zoning of their property be changed from a Low Density Residential Zoning District (LRZD) to a Highway Commercial Zoning District (HCZD). The Polson City Council (Council) approved the request. Lake County First, Greg Hertz, Meredith B. Pollack, and others (collectively "Appellants") filed suit against the Council and individual members of the Council in the Twentieth Judicial District Court, Lake County. Wal-Mart intervened. Appellants and Wal-Mart filed cross motions for summary judgment, and the District Court granted Wal-Mart's motion, from which Appellants appeal. We affirm.

¶2 Appellants raise numerous issues on appeal, which we restate as follows:

¶3 1. Whether the District Court erred by ruling that the Council need not consider the Polson Growth Policy that was adopted shortly before the approval of the zoning amendment.

¶4 2. Whether the District Court erred by ruling that the Council need not consider the Lake County Growth Policy and corresponding zone density maps and regulations in approving the zoning amendment.

¶5 3. Whether the District Court erred in its review of challenges regarding the *Lowe* criteria, the Polson Master Plan, and the Polson Development Code.

    a. Whether the Council sufficiently considered the *Lowe* criteria and issued sufficient findings of fact.

3

b.      Whether the Council made incorrect conclusions concerning the *Lowe* criteria.

c.      Whether the Council erred in finding that the zoning amendment substantially complied with the Polson Master Plan.

d.      Whether Appellants properly challenged compliance with the Polson Development Code.

¶6      4.      Whether the zoning amendment constitutes illegal spot zoning.

¶7      5.      Whether Appellants' constitutional due process rights to know and participate were violated by adoption of the zoning amendment.

¶8      6.      Whether Wal-Mart's substitution of Judge Deschamps was untimely and should have been denied.

## FACTUAL AND PROCEDURAL BACKGROUND

¶9      Wal-Mart obtained a property interest in approximately twenty-eight acres of land zoned LRZD lying on the east side of Highway 93 as it enters Polson from the south.  In the fall of 2005, Wal-Mart submitted "pre-application" materials to the City of Polson Planning Department (Department) seeking a change in the zoning designation to HCZD, approval of a three-lot subdivision, and annexation into the City of Polson.[1]  Wal-Mart appeared before the City/County Planning Board (Planning Board or Board) in October 2005 and received comments from both Board members and the public concerning the proposed development.  Wal-Mart then conducted various studies to address the issues raised during that public meeting.  In March 2006, Wal-Mart submitted an application to the Department requesting approval of a Special Use Permit, approval of a subdivision, a

---

[1] In late 2004 Wal-Mart's predecessor-in-interest submitted an application for annexation and zoning change for the property.  The Department and the Board recommended approval, but in early 2005 the Council denied the application because of insufficient information about the development plans for the property.

4

zoning amendment, and annexation of the property by the City. Wal-Mart's zoning change request was contingent upon approval of the annexation request. The subdivision request served to separate the twenty-eight total acres into three lots: Lot 1, an approximately eighteen-acre Wal-Mart Supercenter site; Lot 2, an approximately one-acre site to the south of Lot 1; and Lot 3, an approximately nine-acre lot to the east of Lot 1.

¶10 On May 9, 2006, the Planning Board conducted a public meeting concerning the application and received public comment. The Department provided a staff report (Department's Report) to the Board analyzing the factual circumstances and the legal requirements related to the application. The Department's Report included findings of fact, which were referenced for both the subdivision request and the zoning amendment. The Report recommended that, upon conditions, the Planning Board should recommend approval of the application to the City Council. The Board conducted a public hearing at which the Department presented its Report to the Board, Wal-Mart made a presentation about the proposal, and extensive public comments were received. The Board then discussed the application and voted to approve the Special Use Permit, recommend that the Council approve the subdivision, and recommend that the Council deny the zoning change. The Board does not review annexation requests.

¶11 On June 29, 2006, the Council met to consider the application. The Department discussed its Report, Wal-Mart made a presentation about the proposal, and the Council heard extensive public comments. The Council then voted to approve the subdivision and annexation requests. The Council approved the zoning amendment as to Lots 1 and 2

5

but denied the zoning change requested for Lot 3, leaving its designation as residential. The zoning change to Lots 1 and 2 was enacted by the Council as Ordinance 623.

¶12 Simultaneously with the processing of Wal-Mart's application, the City developed and adopted a new growth policy. That process began in January 2005 and continued through June 19, 2006, when the Council adopted the Polson Growth Policy (PGP). Prior to adoption of the PGP, the Polson Master Plan (PMP) was the City's comprehensive planning document. Also relevant to the application was the Polson Development Code (PDC), a set of regulatory requirements aimed at implementing the policies of the PMP.

¶13 Appellants filed this action in District Court challenging the Council's approval of the zoning amendment. Wal-Mart intervened in the suit. Other than filing an answer, the Council did not participate in the litigation. The District Court heard cross motions for summary judgment and found in favor of Wal-Mart. Additional facts will be discussed herein.

## STANDARD OF REVIEW

¶14 This case is before us on a grant of summary judgment. We review district court grants of summary judgment de novo. *North 93 Neighbors, Inc. v. Bd. of Co. Commrs. of Flathead Co.*, 2006 MT 132, ¶ 17, 332 Mont. 327, 137 P.3d 557.

¶15 Additional standards of review will be discussed herein.

**DISCUSSION**

¶16   **1.  Whether the District Court erred by ruling that the Council need not consider the Polson Growth Policy that was adopted shortly before the approval of the zoning change.**

¶17   As mentioned, development of the new PGP and processing of Wal-Mart's application for zoning change occurred simultaneously, with approval of the PGP coming about ten days prior to the Council's final vote on the zoning amendment.  Appellants argue that because the PGP was adopted before the zoning change was finalized, the Council erred by not reconsidering Wal-Mart's application under the PGP.  Wal-Mart responds that because the PMP was undeniably the relevant document during the application process, the Council did not need to reconsider the application under the PGP.[2]

¶18   Appellants rely on § 76-1-605(1), MCA (2005), which provides that "[s]ubject to subsection (2), after adoption of a growth policy, the governing body . . . must be guided by and give consideration to the . . . growth policy in the . . . adoption of zoning ordinances or resolutions."  However, in turn, subsection (2) provides that "[a] growth policy is not a regulatory document" and that a governing body "may not withhold, deny, or impose conditions on any land use approval or other authority to act based solely on compliance with a growth policy. . . ."

---

[2] Formerly called "master plans," these planning documents are now statutorily referred to as "growth policies."  *See* § 76-1-106, MCA (2005); *Citizen Advocates for a Livable Missoula, Inc. v. City Council*, 2006 MT 47, ¶ 20 n. 1, 331 Mont. 269, 130 P.3d 1259.  "A growth policy 'essentially surveys land use as it exists and makes recommendations for future planning . . . .'" *Citizen Advocates*, ¶ 20 (quoting *Ash Grove Cement Co. v. Jefferson Co.*, 283 Mont. 486, 494, 943 P.2d 85, 90 (1997)).

¶19    Appellants also cite to a provision in the new PGP, which states that the PGP "is intended to help guide <u>present</u> and future development in the City of Polson." (emphasis by Appellants). However, this quote is a snippet from a section of the PGP entitled "Growth Policy Review and Revision," which governs future review and amendment of the Growth Policy for purposes of keeping it current. Taken in its context, this is not a statement about the applicability of the PCP to applications under review when the PGP was adopted.

¶20    The District Court concluded that "[n]othing in the record supports the assertion that the PGP was meant to apply retroactively, and equity requires that both the Board and Council consider the application under the same regulation." The District Court's determination distinguishes the PGP from the development code at issue in *Town Pump, Inc. v. Bd. of Adjustment of the City of Red Lodge*, 1998 MT 294, ¶ 11, 292 Mont. 6, 971 P.2d 349, which contained a retroactivity clause making the code explicitly applicable to pending applications.

¶21    The predecessor PMP was the document in effect during virtually the entirety of the review process, from the submission of Wal-Mart's application through the preparation of city reports, review by the Planning Board, and the holding of public hearings. Appellants de-emphasize the fact that this earlier version of the PGP guided consideration of Wal-Mart's application at each stage of the review process. In consideration of the stated statutory purpose of a growth policy as a non-regulatory document, and the absence of any indication that the PGP was intended to apply retroactively, we conclude the District Court reached a correct and reasonable

8

determination. To hold otherwise would require the Council to put all applications on hold pending approval of a new growth policy, repeat the review process under the new policy, or attempt to apply a not-yet-finalized growth policy to an application. Under these facts, we cannot conclude there was error.

¶22 **2. Whether the District Court erred by ruling that the Council need not consider the Lake County Growth Policy and corresponding zone density maps and regulations in approving the zoning change.**

¶23 Appellants briefly argue that the Council abused its discretion by failing to rely upon the Lake County Growth Policy (LCGP) and County Density Map in reviewing the application, asserting that "[u]ntil such time as the subject property was approved for annexation into the City, planning and zoning for the property was governed by the Lake County Growth Policy and the Lake County Density Map and Regulations . . . ."

¶24 Implicit in Appellants' argument is the recognition that once the property was annexed into the City, the county planning regulations would no longer be applicable. In fact, the application was submitted as contingent upon approval of the property's annexation into the City. Without annexation, the application would be denied and there would be no development. The District Court reasoned that "[s]ince the annexation request was an essential part of the application, it was not necessary for the Council to consider the [County policies]." Because the County regulations would never govern the application as submitted, we agree with the District Court's determination.

9

¶25    **3.  Whether the District Court erred in its review of challenges regarding the *Lowe* criteria, the Polson Master Plan, and the Polson Development Code.**

¶26    Appellants' briefing sets forth nine issues for review.  However, the arguments do not always correspond with the issues as stated, and multiple points are argued under single headings.  Thus, we have reorganized Appellants' arguments around the types of challenges presented, and will address them as follows.  Under Issue 3a, we will take up Appellants' arguments concerning the sufficiency of the Council's consideration of the *Lowe* criteria and issuance of findings of facts.  Under Issue 3b, we will address whether the Council reached incorrect substantive conclusions in applying the *Lowe* criteria.  Under Issue 3c, we will address whether the zoning amendment substantially complies with the PMP.  Under Issue 3d, we will address issues concerning the PDC.

¶27    **3a.  Whether the Council sufficiently considered the *Lowe* criteria and issued sufficient findings of fact.**

¶28    Appellants argue that the Council failed to enter findings of fact and failed to conduct a sufficient, independent analysis of the *Lowe* criteria to satisfy the requirements of statute and the PDC.

¶29    In *Lowe v. City of Missoula*, 165 Mont. 38, 41, 525 P.2d 551, 553 (1974), this Court set aside a zoning change after determining there was an insufficient factual record for the governing body to make findings regarding the zoning change criteria.  We stated that "the record is so lacking in fact information that the action on the part of the City Council and district court could be said to have been based on mistakes of fact," and noted that the record simply lacked any evidence pertaining to certain statutory zoning criteria, commonly referred to as the "*Lowe* criteria."  *Lowe*, 165 Mont. at 42, 525 P.2d at

10

553. Then, in *Schanz v. City of Billings*, 182 Mont. 328, 335-36, 597 P.2d 67, 71 (1979), the Court held that the District Court erred by failing to examine whether the governing body had engaged in an appropriate consideration of the *Lowe* criteria.

¶30    Similarly, in *North 93 Neighbors*, ¶ 43, we considered appellants' arguments that the commissioners had failed to issue findings of fact under the zoning statutes and local regulations, which required that the commissioners "be guided by and adopt findings of fact," and that the commissioners had failed to properly consider the *Lowe* criteria.[3] We considered what information was before the commissioners, including the application for the zoning amendment and the planning office's report, as well as the planning board's discussion and adoption of findings of fact. *North 93 Neighbors*, ¶ 43. We noted that the commissioners had reviewed the planning office's report, reviewed the planning board's recommendation, and considered public comment, including plaintiffs' report asserting that the *Lowe* criteria had not been met. *North 93 Neighbors*, ¶ 44. Although the commission had not adopted its own findings of fact, we concluded that nothing required the commissioners to enter such independent findings, and that the commissioners had "followed the proper statutory and regulatory procedure for adopting zoning amendments and had sufficient evidence before it to make an informed decision." *North 93 Neighbors*, ¶ 44.

---

[3] The zoning issues in *North 93 Neighbors* were governed by § 76-2-203, MCA, the county zoning statute. This matter is governed by § 76-2-304, MCA, the municipal zoning statute. However, the two statutes are nearly identical, and therefore *North 93 Neighbors* provides guidance. A challenge was also made in *North 93 Neighbors* to a growth policy amendment, but the zoning-related determinations made in that case provide the specific authority for the issues raised here. *North 93 Neighbors*, ¶¶ 20, 39.

¶31 Similar to the county municipal statutes, the municipal zoning statutes require notice and hearings, but do not require the entry of findings of fact. *See* §§ 76-2-303, 305, MCA. The PDC states, similar to the local regulations at issue in *North 93 Neighbors*, that Council decisions "shall be reported in the form of findings of fact and conclusions of law." PDC (Mont.) Ch. 11, Div. 4, ¶ U (1993). However, it further provides that "[f]indings of fact may be established by reference to application materials, the [Department's Report], and testimony at the hearing. Conclusions of law shall be reported in the form of checklists showing that all requirements of the plan and these regulations have been considered." PDC at Ch. 11, Div. 4, ¶ U.

¶32 Wal-Mart's application addressed each *Lowe* criteria in detail, describing why the proposed zoning is designed to meet each requirement. *See North 93 Neighbors*, ¶ 42 ("Wolford's application to amend the zoning regulations addressed all 12 of these criteria at length.") The Department's Report referenced Wal-Mart's discussion of the *Lowe* criteria, and also referenced findings of fact that were read into the record by Department staff during the Board's public hearing. The Department's Report contained findings and analysis relating to various *Lowe* criteria, although these were not specifically denominated as such. For instance, the report indicates the subject property may not be appropriate for residential development due to its proximity to the highway, finding that the "property is in an appropriate location for commercial development." This would correspond to the criterion concerning suitability of the area for particular uses. The findings demonstrate that analyses of traffic, water, sewer, fire, police, and other community impacts were conducted and that Wal-Mart would be required to comply with

12

further conditions to ensure the zoning change would satisfy broader zoning purposes. The Council also received extensive public comment, including a report addressing the *Lowe* criteria prepared by a land use consultant hired by the Plaintiffs/Appellants.

¶33 In enacting Ordinance 623, which adopted the zoning amendment, the Council considered Wal-Mart's application, the Department's Report and comments, the Board's recommendation, and public comments. The Ordinance provides that "the report of the City planning staff, as presented and submitted to the City Council, is hereby adopted and issued as the findings of the City Council as to the criteria of MCA § 76-2-304 and *Lowe v. City of Missoula*." The Ordinance states that the *Lowe* criteria have all been satisfied, delineating each criterion, and concludes that the statutes and the PDC had been complied with. This incorporation by reference to the application, the Department's Report, and other evidence is expressly contemplated by the PDC.

¶34 "The applicable standard of review is whether the information upon which the [governing body] based its decision 'is so lacking in fact and foundation' that 'it is clearly unreasonable and constitutes an abuse of discretion.'" *North 93 Neighbors*, ¶ 44 (quoting *Schanz*, 182 Mont. at 335-36, 597 P.2d at 71). We have not established a requirement that a governing body explain in detail why it has determined each criterion is or is not met, and precisely what facts it found most convincing. In a review process similar to that approved in *North 93 Neighbors*, the Council considered the application, the Department's Report, the Board's recommendation and public comments, and assessed the *Lowe* criteria based upon these considerations. It adopted as its own the findings set forth in the Department's written report and oral presentations. Therefore,

we conclude that the Council "followed the proper statutory and regulatory procedure for adopting zoning amendments and had sufficient evidence before it to make an informed decision." *North 93 Neighbors*, ¶ 44.

¶35 **3b. Whether the Council made incorrect conclusions concerning the *Lowe* criteria.**

¶36 In addition to arguing that the Council did not have sufficient information and did not sufficiently consider the *Lowe* criteria, Appellants also assert that the Council erred in its determination that the *Lowe* criteria were satisfied. Appellants argue that "the *Lowe* criteria are actually impeded rather than encouraged by this zone change." Thus, Appellants are not only challenging whether the Council performed its procedural duty and considered the *Lowe* criteria based on sufficient evidence, but whether the Council reached the wrong substantive conclusions based upon that evidence.

¶37 Zoning is a legislative enactment and thus is presumed to be valid and reasonable. In *Lowe*, the court stated that rezoning and zoning are different and thus the standard of review is different. *Lowe*, 165 Mont. at 44, 525 P.2d at 554. However, we overruled this distinction in *Schanz*, stating that "[a] rezoning ordinance, like a zoning ordinance, is a legislative enactment, and is entitled to the presumptions of validity and reasonableness." *Schanz*, 182 Mont. at 335, 597 P.2d at 71; s*ee also The Greens at Fort Missoula, LLC v. City of Missoula*, 271 Mont. 398, 403, 897 P.2d 1078, 1081 (1995); *North 93 Neighbors*, ¶ 18. As discussed above, where a party challenges whether the governing body had sufficient facts to consider the *Lowe* criteria, we will review "whether the information upon which the [governing body] based its decision 'is so lacking in fact and foundation'

14

that 'it is clearly unreasonable and constitutes an abuse of discretion.'" *North 93 Neighbors*, ¶ 44 (quoting *Schanz*, 182 Mont. at 335-36, 597 P.2d at 71); *see also Town and Country Foods, Inc. v. City of Bozeman*, 2009 MT 72, ¶ 13, 349 Mont. 453, 203 P.3d 1283. However, unlike the challenges in *Schanz* and *North 93 Neighbors* to the procedure used and the sufficiency of evidence before the governing body, under this issue Appellants are challenging the substantive decision made by the Council. The authority to make such determinations is within the Council's legislative powers, and courts are ill-equipped to make them, thus entitling the decisions "to the presumptions of validity and reasonableness." *Schanz*, 182 Mont. at 335, 597 P.2d at 71 (citations omitted).

> [A]ctions on proposals to rezone property are generally characterized as legislative acts representing legislative judgment. Consequently, such actions have been accorded a presumption of validity, limiting judicial review to a determination of whether the amendment or rezoning or refusal to rezone was arbitrary, capricious, or unreasonable, having no substantial relation to the public health, safety or general welfare.

Patrick J. Rohan, *Zoning Law and Practice* vol. 6, § 38.02[3] (Eric Damian Kelly ed., Matthew Bender 2009); *see also Englin v. Bd. of Co. Commrs.*, 2002 MT 115, 310 Mont. 1, 48 P.3d 39 (board's denial of request for zoning change was not "arbitrary or capricious"). To be arbitrary or capricious, "the decision being challenged must appear to be random, unreasonable, or seemingly unmotivated, based on the existing record." *Kiely Const., L.L.C. v. City of Red Lodge*, 2002 MT 241, ¶ 69, 312 Mont. 52, 57 P.3d 836 (quoting *Silva v. City of Columbia Falls*, 258 Mont. 329, 335, 852 P.2d 671, 675 (1993)).

¶38 Appellants assert that the zoning change violates the *Lowe* criterion regarding the promotion of health and the general welfare because of "the negative impact that Wal-mart stores, particularly Super Centers, have on local wages, health care and the universal negative impacts caused to pre-existing competing local businesses." While there is evidence to support these claims, there is also evidence in the record which contradicts these claims, including a statement provided by an economist hired by Wal-Mart and public comments made by local citizens. Quoting § 76-2-304(2), MCA, Appellants also assert that the zoning change was not "made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout the municipality." However, the Council received extensive comments that a HCZD is a more appropriate classification for this property because it lies next to the highway and is surrounded on three sides by HCZD zoning. Appellants argue that the zoning change fails to insure safety from fire and other dangers. Yet Wal-Mart was required to address these needs by adding a water pressure booster system to aid fire-fighting capabilities to the surrounding areas and to improve the municipal water system.

¶39 Based on the evidence before it, the Council's decision that the *Lowe* criteria were satisfied cannot be deemed "random" or "unreasonable." *Kiely Const.*, ¶ 69. The Council had conflicting evidence and analyses before it for each of the *Lowe* criteria and made a legislative determination based upon its consideration of this information.

Appellants have failed to establish that the Council's conclusions concerning the *Lowe* criteria were arbitrary or capricious.

¶40 **3c. Whether the Council erred in finding that the zoning change substantially complied with the PMP**.

¶41 Appellants argue that the zoning change does not substantially comply with PMP provisions addressing line-of-sight views and the Central Business District (CBD). They assert that the Council failed to even consider issues related to the CBD.

¶42 "[I]n reaching zoning decisions, the local governmental unit should at least substantially comply with the comprehensive plan (or master plan)." *Little v. Bd. of Co. Commrs. of Flathead Co.*, 193 Mont. 334, 353, 631 P.2d 1282, 1293 (1981). Although we have explained that statutory changes were apparently intended to alter this standard to some degree, *Citizen Advocates*, ¶ 25, Wal-Mart offers that this Court need not "ascertain the impact of those amendments on the 'substantial compliance' standard, because this is a case where the zoning amendment at issue here more than 'substantially complied' with the applicable regulations . . . ." Thus, we apply the substantial compliance standard herein.

¶43 Appellants first allege noncompliance with the PMP based on the Wal-Mart store's potential visual impacts. The PMP provides that "monolithic structures that continuously block views from the highway to the lake" should not be permitted. Views were a significant issue during the application process and were discussed in detail by the application and during public meetings. Wal-Mart worked cooperatively with the Department and the Board to address the architecture and elevation of the building to

17

ensure that views would not be hindered. Wal-Mart presented a computer simulation of the proposed store to illustrate that the store would not rise above the grade of the hill next to the highway and thus would not obstruct the views from the highway to the lake. Therefore, we conclude that the Council substantially complied with the PMP's objectives concerning views of the lake.

¶44 Appellants also assert that the zoning change violates PMP goals concerning the Central Business District, or CBD. The PMP states that the "regulatory strategy" regarding the CBD is as follows:

> F. Avoid Excessive Commercial Zoning Outside the CBD. Polson's approach to the implementation of this policy is generally a positive one of making the CBD more functional and attractive. Still, the viability of the CBD should be one of the factors considered in reviewing any request to amend the future land use and zoning maps to permit more commercial development.

¶45 Addressing this issue, the Department's Report explained that no properties big enough to accommodate the Wal-Mart store were available within the CBD, and that the roads within the CBD "cannot handle the traffic and parking needs." While presenting the Department's Report to the Board, the Department Director stated her department's belief that traffic to Polson from surrounding areas would increase because of the new store, and that some of this increased traffic may provide additional customers to businesses within the CBD. During the same meeting, an economist hired by Wal-Mart addressed the potential impact of Wal-Mart at length to alleviate fears about impacts upon existing local businesses. Public comments on this issue, pro and con, were also received.

18

¶46     Appellants assert that the PMP's provisions regarding the CBD "mandate the rejection of Wal-mart." However, the PMP states that "Polson's approach to the implementation of [the CBD] is generally a positive one" and does not prohibit adoption of zoning classifications that permit commercial development outside the CBD. Rather, it provides that the viability of the CBD "should be one of the factors considered" when reviewing requests for commercial development. Clearly, that factor was considered here. The evidence indicated that the proposed store could not be physically located within the CBD, that roads within the CBD could not accommodate expected traffic, and that parking in the CBD was insufficient. On the other hand, these concerns were not present on the proposed site, which was bounded on three sides by property with the same HCZD zoning classification that Wal-Mart sought. Further, evidence was offered that the proposed store would help the CBD by increasing total customer traffic to the city. While opposing views were expressed, a conclusion by the Council that the proposed store would endanger the viability of the CBD was certainly not compelled. The issue was well debated and the Council complied with the PMP's requirement for consideration of the issue. Although Appellants briefly argue that the Council did not even consider issues concerning the CBD, this issue was a very visible issue throughout the review process and within the evidentiary record before the Council, including the Department Report, the Department Director's public statements, the Plaintiffs' Report, and many public comments. The Ordinance states that the Council had considered the evidence before it concerning the requirements of the PMP. We conclude that the zoning amendment substantially complied with the PMP.

¶47    **3d.   Whether Appellants properly challenged compliance with the Polson Development Code.**

¶48    Appellants also attempt to argue that the zoning amendment does not "substantially comply" with the PDC.   However, unlike the PMP, which is a non-regulatory "growth policy," the PDC is a separate, binding regulatory ordinance.   The PDC was not adopted under the authority of chapter 1, section 6 of Title 76, MCA, governing growth policies, but was enacted under chapters 2 and 3 of Title 76, MCA, granting regulatory powers to counties and cities.   *See also* PDC at Ch. 1, Div. 1, ¶ C ("These regulations are adopted under the authority granted by 76-2-201, MCA, et seq., which authorizes county zoning; 76-2-301, MCA, et seq., which authorizes city zoning; and 76-3-501, MCA, which requires cities and counties to adopt subdivision regulations.").   Therefore, because the PDC is not a growth policy, challenges to the Council's compliance with it cannot be made pursuant to § 76-2-304(1)(a), MCA (zoning regulations must be made in accordance with a growth policy).   Appellants cite PDC provisions governing permissible development within a specific zoning district—not governing whether a zoning classification is appropriate for an area.   Thus, Appellants are not challenging the Council's adoption of the zoning amendment, but, rather, they are challenging the Planning Board's granting of the Special Use Permit.   However, this issue was not properly filed or preserved within this case.   The Board is a different entity than the Council and different review procedures exist for challenges to its permit decisions.   Both the statutes and the PDC provide that appeals of Board decisions concerning special use permits are to be made to the Board of Adjustment, and judicial

review of board of adjustment decisions has its own procedures. *See* §§ 76-2-326, 327, MCA. We need not consider this issue further.

¶49 **4. Whether the zoning amendment constitutes illegal spot zoning.**

¶50 In *Little*, 193 Mont. at 346, 631 P.2d at 1289, we stated that generally, "three factors enter into determining whether spot zoning exists in any given instance." Those factors are "(1) whether the requested use is significantly different from the prevailing use in the area, (2) whether the area which is being rezoned is rather small, and looks to benefit a small number of persons, and (3) whether the rezone appears to be more in the nature of special legislation, designed to benefit a few landowners at the expense of the surrounding landowners or the general public." *Citizen Advocates*, ¶ 32 (citing *Little*, 193 Mont. at 346, 631 P.2d at 1289). "If spot zoning is invalid, usually all three elements are present . . . ." *Little*, 193 Mont. at 346, 631 P.2d at 1289 (citation omitted).

¶51 In *Citizen Advocates*, ¶¶ 32-34, the Court considered whether a zoning change that permitted a Safeway store was spot zoning. Analyzing the first factor, we considered the prior zoning and uses in the area and concluded that the Safeway store was not "significantly different" from the past history of mixed residential and business uses, which would continue to exist. *Citizen Advocates*, ¶ 33. As to the last two factors, we concluded that "while the zoning proposal certainly benefits Safeway and [a co-applicant hospital], we cannot conclude that the benefit is conferred at the expense of the general public." *Citizen Advocates*, ¶ 34.

¶52 Here, the property at issue is bound on three sides by HCZD, or highway commercial zoning. Commercial uses are currently established to the north and south of

21

the property. Thus, the zoning change and proposed use of the property are not significantly different than the prevailing use in the area. The Department Report indicated that the "property is in an appropriate location for commercial development" and that commercial use might be more appropriate than residential use because residential development next to a highway leads to a variety of problems. Similar to our conclusion in *Citizen Advocates*, while the zoning proposal certainly benefits Wal-Mart, we cannot conclude that the benefit is inappropriately conferred at the expense of the general public and constitutes illegal spot zoning.

¶53 **5. Whether Appellants' constitutional due process rights to know and participate were violated by adoption of the zoning amendment.**

¶54 Appellants very briefly argue that the Council's decision to approve the zoning amendment only as to two of the three lots at issue deprived the public of the right to know and participate. Appellants offer no legal authority demonstrating why the Council would not have authority to partially approve and partially deny a zoning request that had undergone a substantial public review process without asking for further public comment. As Wal-Mart points out, "there was no action taken by the City Council to affect any parcel of property that was not" noticed and discussed. We find no error with the District Court's ruling upholding the Council's partial approval of the application.

**¶55  6. Whether Wal-Mart's substitution of Judge Deschamps was untimely and should have been denied.**

¶56  Appellants argue that Wal-Mart's motion for substitution of Judge Deschamps was untimely filed, and therefore Judge Swandal did not have jurisdiction to preside over this matter.

¶57  We have held that, in cases where a motion for substitution was improperly denied, the presiding judge no longer has jurisdiction over the case. *Taylor v. Matejovsky*, 261 Mont. 514, 519, 863 P.2d 1022, 1025 (1993) ("[O]nce the motion for substitution of judge was timely filed, Judge Sorte was without jurisdiction to act on the merits . . . ."). In this case, however, Judge Deschamps voluntarily withdrew from the case when the motion for substitution was filed, even though it was apparently untimely. Judge Deschamps' withdrawal effectuated a substitution and effectively mooted the motion for substitution before it was acted upon. Thus, the motion was not improperly disposed, and Judge Swandal properly presided over the matter.

¶58  Affirmed.


/S/ JIM RICE


We concur:

/S/ JOHN WARNER
/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ DAVID RICE, District Judge Sitting in for Former Chief Justice Karla Gray