DA 09-0183

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 377

LIBERTY COVE, INC.,

Plaintiff and Appellant,

v.

MISSOULA COUNTY,

Defendant and Appellee.

APPEAL FROM: District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-08-805
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Cory R. Gangle; Milodragovich, Dale, Steinbrenner & Nygren, P.C.,
Missoula, Montana

For Appellee:

Fred Van Valkenburg, Missoula County Attorney; D. James McCubbin,
Deputy County Attorney, Missoula, Montana

Submitted on Briefs: September 23, 2009

Decided: November 10, 2009

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Liberty Cove, Inc. (Liberty Cove) appeals from an order of the Fourth Judicial District Court, Missoula County, affirming the Missoula County Board of County Commissioners' (County Commissioners) decision to adopt interim zoning banning, for one year, development of gravel pits on Liberty Cove's property. We affirm.

¶2 Liberty Cove argues that Missoula County's decision to enact interim zoning was arbitrary and capricious, and violated Montana law. Specifically, Liberty Cove challenges the zoning decision by raising the following issues for review:

¶3 Whether the District Court erred in concluding there was an emergency to justify interim zoning.

¶4 Whether the District Court erred in concluding that Missoula County gave proper notice before adopting interim zoning.

¶5 Whether the District Court erred in concluding that the interim zoning adopted by Missoula County did not constitute illegal reverse spot zoning.

## BACKGROUND

¶6 Liberty Cove appeals an interim zoning decision by the Missoula County Commissioners for an area north of Lolo. The Missoula County Board of County Commissioners enacted interim zoning to address public health and safety concerns regarding a proposal to establish a gravel mining, crushing, and asphalt production operation on property owned by Liberty Cove. The concerns arose from the possibility that the mining applicant would receive a mining permit without any substantive

2

environmental review by the Montana Department of Environmental Quality (DEQ) and because the mining applicant indicated that they could avoid oversight of traffic impacts by the Montana Department of Transportation (MDT).

¶7 On April 28, 2006, Liberty Cove entered into a purchase agreement with JTL Group, Inc. (JTL) (now Knife River) for "construction of a lake" on Liberty Cove's property. JTL contracted for the gravel mining operations. An open-cut mining permit from DEQ was required in order to dig the lake and remove gravel. JTL requested a zoning compliance permit from Missoula County as part of the mining permit application process. The County granted the zoning compliance permit on March 8, 2006, noting that the site location was not zoned. DEQ deemed the mining permit application complete in January 2007.

¶8 Missoula County received complaints from Lolo residents requesting the County enact interim zoning to address environmental and traffic concerns at the site. The County held a public meeting on December 19, 2007, to discuss imposing interim zoning to preclude mining operations. At that time, the County Commissioners did not find an emergency to justify interim zoning, because environmental concerns would be subject to DEQ review of the mining permit application, and traffic concerns would be addressed by MDT review of the application for a permit to access Highway 93, then the only access to the gravel pit proposed.

¶9 On May 23, 2008, JTL sued DEQ seeking a court order that DEQ issue a permit for the proposed mining operation. Since other district court orders had granted this relief, the County Commissioners were concerned that DEQ could issue a permit without

3

substantive environmental review. The County also learned that JTL might pursue a different access to the gravel pit that would not require a MDT permit and thus would not be subject to any regulatory review regarding public health and safety.

¶10 The County Commissioners scheduled a public meeting for May 30, 2008, to address these issues and the possibility of enacting interim zoning. The County posted notice of the meeting on its website and issued a press release announcing the meeting, which resulted in a prominent front page article in the *Missoulian*. The County Commissioners received significant public comment prior to making a decision, including comment from JTL and Liberty Cove. The County Commissioners then determined that an emergency existed due to changed circumstances caused by JTL and enacted interim zoning to address the emergency. The interim zoning placed various residential designations on the area where Liberty Cove's property is located.

¶11 Liberty Cove challenged the County's interim zoning on June 26, 2008, and the District Court affirmed the County's action on March 3, 2009. Liberty Cove now appeals.

**STANDARD OF REVIEW**

¶12 A local government's zoning designation constitutes a legislative act, which courts review for abuse of discretion. *North 93 Neighbors, Inc. v. Bd. of Co. Commrs. of Flathead Co.*, 2006 MT 132, ¶ 18, 332 Mont. 327, 137 P.3d 557. A zoning ordinance is entitled to a presumption of validity and reasonableness. *Schanz v. City of Billings*, 182 Mont. 328, 335, 597 P.2d 67, 71 (1979). This Court reviews a district court's conclusions of law to determine if they are correct. *North 93 Neighbors*, ¶ 17. We

4

review de novo a district court's interpretation of statutes. *Fasbender v. Lewis and Clark Co. Bd. of Co. Commrs.*, 2009 MT 323, ¶ 11, 352 Mont. 505, ___ P.3d ___.

**DISCUSSION**

¶13 *Whether the District Court erred in concluding there was an emergency to justify interim zoning.*

¶14 Interim zoning is provided for by § 76-2-206, MCA (2007):

> (1) The board of county commissioners may adopt an interim zoning map or regulation as an emergency measure in order to promote the public health, safety, morals, and general welfare if:
> (a) the purpose of the interim zoning map or regulation is to classify and regulate those uses and related matters that constitute the emergency; and
> (b) the county:
> (i) is conducting or in good faith intends to conduct studies within a reasonable time; or
> (ii) has held or is holding a hearing for the purpose of considering any of the following:
> (A) a growth policy;
> (B) zoning regulations; or
> (C) a revision to a growth policy, to a master plan, as provided for in 76-1-604(6) and 76-2-201(2), or to zoning regulations pursuant to this part.
> (2) An interim resolution must be limited to 1 year from the date it becomes effective. The board of county commissioners may extend the interim resolution for 1 year, but not more than one extension may be made.

In 2002, the Montana Attorney General issued an opinion on this statute concluding that "both 'emergency' and 'urgency' measures exist if there is some exigent circumstance impacting the public health, safety and welfare, and zoning is required to address the exigency." 49 Mont. Op. Atty. Gen. No. 23, § IV, http://www.doj.mt.gov/resources/opinions2002/49-023.pdf (Sept. 26, 2002). "The question of what constitutes an

'exigency' is necessarily fact-bound, and under the law it is left largely to the discretion of the local governing body." 49 Mont. Op. Atty. Gen. No. 23, § IV.

¶15 Liberty Cove primarily argues that there was no emergency to justify interim zoning. Liberty Cove claims that the sole basis for the emergency was the fact that DEQ had failed to timely issue a permit. Liberty Cove contends that DEQ already reviewed the mining permit application and deemed it complete, that DEQ would retain regulatory responsibilities after issuing a permit, and that Missoula County found that no emergency existed in December 2007. Liberty Cove maintains that no facts or expert testimony support finding an emergency in these circumstances.

¶16 At the May 30, 2008, public meeting, the County Commissioners found that:

> the application of a permit from the JTL Group, also known as Knife River, constitutes an emergency related to issues of public health, welfare and safety, because the Board of County Commissioners find a deficiency, or failure, of the regulatory process regarding these issues as promulgated by the State of Montana Department of Environmental Quality and the State of Montana Department of Transportation.

More specifically, the interim zoning resolution included findings that "recent legal decisions in the State of Montana may compel DEQ to issue a permit without the review that is normally carried out by DEQ" and "MDT will not be able to require traffic control measures during the operation of the pit that will adequately protect public health and safety." The District Court referenced these findings in concluding that "the Board validly exercised its discretion in enacting interim zoning as they determined based on the facts before them that an interim measure was needed to resolve an exigent circumstance impacting the public health, safety, and general welfare."

¶17 We agree with the District Court that "a reasonable emergency existed to enact the interim zoning." In December 2007, the County Commissioners found that no emergency existed because they understood that DEQ would conduct additional environmental review and MDT would address traffic concerns related to the proposed gravel mine. However, by May of 2008, the County Commissioners realized that DEQ could issue a mining permit without additional environmental review and that changes in access to the gravel mine would not require a MDT permit. Since the County Commissioners' earlier findings were based on facts that were no longer applicable, the Board was justified in finding an emergency related to issues of public health, safety, and welfare due to regulatory deficiencies. The County Commissioners were within their discretion as the local governing body in finding an emergency justifying adoption of interim zoning.

¶18 *Whether the District Court erred in concluding that Missoula County gave proper notice before adopting interim zoning.*

¶19 Liberty Cove asserts that notice for interim zoning under § 76-2-206, MCA (2007), is governed by the procedural requirements outlined in § 76-2-205, MCA. Because Missoula County did not give notice of the interim zoning hearing according to the procedural requirements for standard zoning set out in § 76-2-205, MCA, Liberty Cove claims that the interim zoning is invalid. Missoula County notes that a plain reading of § 76-2-206, MCA (2007), imposes no such procedural requirements, and is actually silent as to any required notice or hearing. Missoula County further argues that requiring the County to follow the same procedure to enact interim zoning as required to

7

enact standard zoning under § 76-2-205, MCA, would render the interim zoning statute superfluous.

¶20 Liberty Cove cites cases from this Court holding that § 76-2-206, MCA, is governed by the notice and hearing provisions of § 76-2-205, MCA, thereby voiding temporary interim resolutions enacted in emergency sessions to stop completion of particular buildings. *Bryant Dev. Assn. v. Dagel*, 166 Mont. 252, 258, 531 P.2d 1320, 1324 (1975); *State ex rel. Christian, Spring, Sielbach & Assocs. v. Miller*, 169 Mont. 242, 245, 545 P.2d 660, 662 (1976).[1] This Court recently clarified that *Bryant* and *Christian* held that due process requires that the notice and hearing procedures of standard zoning apply to interim zoning. *Fasbender*, ¶ 17. However, in those cases the affected landowners received no notice of the emergency sessions that adopted interim zoning. *Fasbender*, ¶¶ 15-16; *Bryant*, 166 Mont. at 254, 258, 531 P.2d at 1322, 1324; *Christian*, 169 Mont. at 244-45, 545 P.2d at 661-62.

¶21 Liberty Cove received actual notice and in fact commented at the hearings contemplating interim zoning. The law has long recognized that actual attendance and participation may constitute a waiver of alleged deficiencies of notice. *See e.g. Knode v. Williamson*, 84 U.S. 586, 589 (1873). Furthermore, the Montana Constitution's fundamental right of citizen participation guaranteed by Art. II, § 8, has been interpreted by statute as requiring notice and an opportunity to be heard. Sections 2-3-101 through -114, MCA. Liberty Cove received notice and had an opportunity to comment at the

---

[1] The Legislature recently amended § 76-2-206, MCA (2009), to provide express notice requirements for adopting interim zoning. While these provisions are not applicable to this appeal, they will supersede the rule from *Bryant* and *Christian* in the future.

public meeting considering interim zoning. This Court's harmless error doctrine provides that "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." M. R. Civ. P. 61. Thus, since Liberty Cove received notice and had an opportunity to be heard, any error in Missoula County's notice was harmless.

¶22 *Whether the District Court erred in concluding that the interim zoning adopted by Missoula County did not constitute illegal reverse spot zoning.*

¶23 Liberty Cove argues that the interim zoning of its property constitutes illegal "reverse" spot zoning. Liberty Cove alleges its land was improperly singled out to receive detrimental treatment. Liberty Cove notes that the interim zoning restricts the use of its property more than other properties in the area. Liberty Cove suggests that the zoning compliance permit and a previous denial of a residential subdivision on the property is further evidence of spot zoning.

¶24 This Court has addressed spot zoning issues in multiple cases. *Lake Co. First v. Polson City Council*, 2009 MT 322, ¶¶ 49-52, 352 Mont. 489, ___P.3d ___; *North 93 Neighbors*, ¶¶ 65-70; *Citizen Advocates For A Livable Missoula, Inc. v. City Council of City of Missoula*, 2006 MT 47, ¶¶ 32-34, 331 Mont. 269, 130 P.3d 1259; *Greater Yellowstone Coalition, Inc. v. Bd. of Co. Commrs. of Gallatin Co.*, 2001 MT 99, ¶¶ 19-37, 305 Mont. 232, 25 P.3d 168; *Boland v. City of Great Falls*, 275 Mont. 128, 132-35, 910 P.2d 890, 893-95 (1996); *Little v. Bd. of Co. Commrs. of Flathead Co.*, 193 Mont. 334, 345-48, 631 P.2d 1282, 1289-90 (1981); *Mont. Wildlife Fedn. v. Sager*, 190 Mont. 247, 263-64, 620 P.2d 1189, 1198-99 (1980); *State ex rel. Gutkoski v. Langhor*, 160

9

Mont. 351, 353-54, 502 P.2d 1144, 1145-46 (1972). Our review of this well-developed precedent yields two important conclusions: this Court has never considered or adopted a "reverse" spot zoning analysis, and this Court has never applied its spot zoning analysis to interim zoning. We decline to do so here.

¶25 This Court's three-part spot zoning test adopted in *Little* requires consideration of factors that may not apply to interim zoning. In particular, the third part of the spot zoning test considers whether "the requested change is more in the nature of special legislation." *Little*, 193 Mont. at 346, 631 P.2d at 1289. In its discussion of this factor, the Court noted that "the inquiry should involve whether the requested use 'is in accord with a comprehensive plan.'" *Little*, 193 Mont. at 347, 631 P.2d at 1290. The Court's review of other jurisdictions' spot zoning analysis reinforced this point: "zoning has been held invalid as spot zoning when it is not in accordance with a comprehensive plan. We cannot ignore this test when our zoning statutes place great weight on the comprehensive plan as a guide in zoning." *Little*, 193 Mont. at 347, 631 P.2d at 1290 (internal citations omitted). However, a local government may adopt interim zoning without a comprehensive plan (now designated a growth policy) to address an emergency of public health, safety, or welfare, while developing a growth policy. Section 76-2-206(1), MCA (2007); 49 Mont. Op. Atty. Gen. No. 23, § IV. Indeed, interim zoning allows a local government to enact temporary zoning to avoid suffering serious detriment while pursuing the necessary planning efforts to adopt a growth policy as a condition precedent to enacting standard zoning. *Allen v. Flathead Co.*, 184 Mont. 58, 63, 601 P.2d 399, 402 (1979) (§ 76-2-206, MCA, "provides a method by which Flathead County may

10

begin developing a master plan [now growth policy] that will comply with the terms of the statute without suffering any serious detriment" in light of the Court invalidating the challenged zoning regulations). Since interim zoning is effective for only one year (with authority to extend it for another year) and may be implemented without a growth policy in place, our spot zoning test is not applicable to interim zoning. Spot zoning challenges to interim zoning measures would serve only to distract local governments from the important planning efforts required to implement standard zoning and would be of limited utility since interim zoning will terminate within a year or two. Therefore, we hold that spot zoning challenges are not applicable to interim zoning measures adopted pursuant to § 76-2-206, MCA.

¶26 Affirmed.

/S/ MIKE McGRATH

We concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER
/S/ JIM RICE

Justice James C. Nelson, specially concurring.

¶27 I agree with the Court's Opinion, but I also reincorporate here my special concurrence in *Fasbender v. Lewis and Clark County Bd. of County Commrs.*, 2009 MT 323, ¶¶ 29-30, 352 Mont. 505, ___ P.3d ___ (Nelson, J., specially concurring).

/S/ JAMES C. NELSON