JUSTICE COTTER
delivered the Opinion of the Court.
¶1 Liberty Cove, Inc., Paul and Norma Rossignol, and Ponderosa Development, Inc. (collectively ‘Landowners”) utilized the protest provision of § 76-2-205(6), MCA, to block the Board of County Commissioners of Missoula County (Commissioners) from establishing a special zoning district north of Lolo, Montana. L. Reed Williams (Williams) challenged the constitutionality of §76-2-205(6), MCA, by filing a complaint against Commissioners in Montana’s Fourth Judicial District Court, Missoula County, seeking declaratory and injunctive relief. Landowners intervened in the action at the District Court and now appeal from the District Court’s order denying their motion to dismiss and granting summary judgment to Williams and Commissioners. We affirm.
ISSUES
¶2 We restate the four issues raised by Landowners on appeal as follows:
¶3 1. Did the District Court abuse its discretion in denying Landowners’ motion to dismiss Williams’ complaint for failure to join them as necessary parties under the Montana Uniform Declaratory Judgments Act?
¶4 2. Did the District Court err in determining that §76-2- 205(6), MCA, was an unconstitutional delegation of legislative power?
¶5 3. Did the District Court err in determining that §76-2-205(6), MCA, was an unconstitutional violation of the right to equal protection *359 and the right to suffrage?
¶6 4. Did the District Court err when it ruled that § 76-2-205(6), MCA, was severable from the remainder of the statute?
FACTUAL AND PROCEDURAL BACKGROUND
¶7 On September 8, 2009, Commissioners and the Lolo Community Council held a joint public meeting to solicit public testimony concerning the development of a zoning proposal for an area north of Lolo, Montana. Public testimony at this meeting indicated that support existed for the development of a zoning proposal. Following the joint public meeting, Commissioners directed their staff to work with residents and landowners to create a proposal to replace the North Lolo Interim Zoning Plan. Three draft alternative plans were presented at public meetings on January 30, February 3, and February 9, 2010. Based on comments received on the alternative plans and additional staff review, Commissioners issued the Planning Board Public Hearing Draft on February 25, 2010, for public comment.
¶8 The proposed North Lolo Rural Special Zoning District consisted of 422 acres of land north of Lolo and west of U.S. Highway 93. Agricultural and forest land comprised 223 acres in the district. Prior to 2008, this area had been unzoned. On May 30,2008, Commissioners enacted interim zoning to address public health and safety issues associated with a gravel mining and asphalt production operation proposed by Liberty Cove, Inc., who is one of the parties referred to as Landowners in the instant case. We previously upheld these interim zoning regulations as lawful in Liberty Cove, Inc. v. Missoula County, 2009 MT 377, 353 Mont. 286, 220 P.3d 617.[1] Commissioners extended the one-year interim zoning in 2009, but the interim zoning was set to expire on May 30, 2010. The proposed North Lolo Special Zoning District would have replaced the interim zoning and continued to prohibit sand and gravel mining and concrete and asphalt operations within the district.
*360 ¶9 Legal notice concerning the North Lolo Growth Policy Amendment and North Lolo Rural Special Zoning District was published on multiple occasions in Missoula newspapers, posted in five locations, mailed to property owners in and near the proposed district, and emailed to interested members of the public in the Lolo area. The Missoula Consolidated Planning Board held public hearings on March 16 and 23, 2010, and recommended approval of the proposed zoning amendment and special zoning district to Commissioners on a 5 to 1 vote.
¶10 On April 7,2010, Commissioners held a public hearing and passed “A Resolution of Intention to Adopt Amendments to the 2002 Lolo Regional Plan as an Amendment to the Missoula County Growth Policy 2005 Update.” Commissioners published notice in accordance with §76-2-205(5), MCA, on April 15, 2010. The publication included notice that the written protest period provided for in §76-2-205(6), MCA, would expire in 30 days. Section 76-2-205(6), MCA, is a protest provision that allows landowners to prevent the board of county commissioners from adopting a zoning resolution when protests are received from one of the following two groups: (1) 40 percent of the real property owners within the district; or (2) real property owners representing 50 percent of property taxed for agricultural purposes or as forest land in the district. When a successful protest is received, it prevents the board of county commissioners from proposing any further zoning resolutions with respect to the subject property for one year. Section 76-2-205(6), MCA.
¶11 On April 20, 2010, five landowners[2] who together owned more than 50 percent of the agricultural and forest land within the district filed a written protest. All parties agree that these landowners owned the requisite acreage to effectively block the zoning proposal pursuant to §76-2-205(6), MCA.
¶12 On May 14, 2010, Williams filed a complaint in District Court against Commissioners. Williams requested that the District Court declare that the protest provision of § 76-2-205(6), MCA, was unconstitutional because it violated equal protection, due process, and voting rights. Williams also asked for a temporary restraining order and preliminary and permanent injunctions preventing Commissioners from taking any action pursuant to the allegedly *361 unconstitutional protest provision.
¶13 On May 20,2010, Commissioners filed an answer. Commissioners agreed with Williams that §76-2-205(6), MCA, was unconstitutional for the reasons set forth by Williams. However, Commissioners admitted that they would apply the protest provision to prevent adoption of the zoning regulations absent an order from the District Court directing otherwise.
¶14 Without objection from Commissioners, the District Court issued an order for a preliminary injunction on May 21, 2010. The order enjoined Commissioners from taking any actions based on § 76-2-205(6), MCA, but permitted Commissioners to proceed in accordance with the remaining provisions of §76-2-205, MCA. On May 26, 2010, Commissioners adopted the North Lolo Rural Special Zoning District. ¶15 Landowners filed an unopposed motion to intervene on May 24, 2010. The District Court granted Landowners’ motion to intervene on May 28, 2010. Next, Landowners filed a M. R. Civ. P. 12(b)(7) motion to dismiss on June 3, 2010, arguing that Williams failed to join all of the proper parties pursuant to M. R. Civ. P. 19, which governs joinder of required parties, and Montana’s Uniform Declaratory Judgments Act (UDJA), §27-8-301, MCA, which requires inclusion of all parties who have an interest which would be affected by the declaration.
¶16 On July 14,2010, Williams filed a motion for summary judgment. Williams’ motion for summary judgment sought a declaration from the District Court that the protest provision of §76-2-205(6), MCA, was an unconstitutional violation of equal protection and voting rights. Williams requested permanent injunctive relief to prevent Commissioners from enforcing the protest provision. Commissioners agreed that § 76-2-205(6), MCA, was unconstitutional and they supported issuance of a permanent injunction. On September 21,2010, Commissioners filed a separate motion for summary judgment, challenging the constitutionality § 76-2-205(6), MCA, as an unconstitutional delegation of legislative power.
¶17 On July 23, 2010, Landowners filed a motion to stay summary judgment proceedings pending the District Court’s disposition of their motion to dismiss. Landowners filed an application to quash, vacate and dissolve the preliminary injunction on August 30, 2010. On October 15,2010, Landowners filed a motion to quash Commissioners’ motion for summary judgment, arguing that Commissioners’ motion addressed matters outside the pleadings, and that Commissioners and Williams lacked standing to challenge the constitutionality of §76-2- *362 205(6), MCA, on the grounds that it represented an unconstitutional delegation of legislative power. In response to Williams’ and Commissioners’ motions for summary judgment, Landowners maintained that the protest provision was constitutional.
¶18 On February 2, 2011, Williams filed a motion for leave to amend his complaint to add the claim that §76-2-205(6), MCA, constituted an unconstitutional delegation of legislative power. Williams alleged that this claim was merely a new theory of recovery that arose from the same set of facts contained in the original complaint. The District Court granted Williams’ motion to amend his complaint on April 18, 2011.
¶19 On April 5,2012, the District Court issued its order addressing all of the outstanding and fully briefed motions. The District Court denied Landowners’ M. R. Civ. P. 12(b)(7) motion to dismiss, denied Landowners’ application to quash, vacate and dissolve the preliminary injunction, and denied Landowners’ motion to quash Commissioners’ motion for summary judgment. The District Court granted Williams’ and Commissioners’ motions for summary judgment and concluded that §76-2-205(6), MCA, was unconstitutional on three grounds: (1) it violated the fundamental right to vote because not all landowners within the district were permitted to participate equally in the zoning process; (2) it violated equal protection rights because there was no compelling state interest in providing some landowners with a vote against zoning regulations while depriving other landowners of the opportunity to vote in favor of the zoning regulations; and (3) it constituted an unconstitutional delegation of legislative power because it failed to provide any standards or guidelines for the application of a protest and failed to provide a legislative bypass to allow for review of a protest. Furthermore, the District Court determined that the protest provision, § 76-2-205(6), MCA, was severable from the remainder of the statute.
¶20 On May 4, 2012, the District Court entered a final judgment in favor of Williams and Commissioners. Landowners appeal.
STANDARDS OF REVIEW
¶21 When considering a motion to dismiss based on the assertion that an indispensible party is absent, the court is given discretion to determine whether the action will proceed or must be dismissed. Blaze Constr. v. Glacier Elec. Coop., 280 Mont. 7, 10, 928 P.2d 224, 225 (1996); Mohl v. Johnson, 275 Mont. 167, 169, 911 P.2d 217, 219 (1996). *363 We review such discretionary rulings for an abuse of discretion. Blaze Constr., 280 Mont. at 10, 928 P.2d at 225; Mont. Rail Link v. Byard, 260 Mont. 331, 337, 860 P.2d 121, 125 (1993).
¶22 We review a district court’s ruling on a motion for summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as the district court. Steichen v. Talcott Props., LLC, 2013 MT 2, ¶ 7, 368 Mont. 169, 292 P.3d 458; Brown & Brown of MT, Inc. v. Raty, 2012 MT 264, ¶ 17, 367 Mont. 67, 289 P.3d 156. Summary judgment “should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.” M. R. Civ. P. 56(c)(3).
¶23 This Court’s review of constitutional questions is plenary. Walters v. Flathead Concrete Prods., 2011 MT 45, ¶ 9, 359 Mont. 346, 249 P.3d 913. The constitutionality of a statute is a question of law, and we review a district court’s legal conclusions for correctness. Walters, ¶ 9. Legislative enactments are presumed to be constitutional, and the party challenging the provision bears the burden of proving beyond a reasonable doubt that it is unconstitutional. DeVoe v. City of Missoula, 2012 MT 72, ¶ 12, 364 Mont. 375, 274 P.3d 752; State v. Ergdorf, 2003 MT 264, ¶ 12, 317 Mont. 436, 77 P.3d 517.
¶24 The severability of an unconstitutional provision from a statute is a matter of statutory interpretation. See Finke v. State ex rel. McGrath, 2003 MT 48, ¶¶ 25-26, 314 Mont. 314, 65 P.3d 576. We review a district court’s interpretation of a statute for correctness. Blanton v. Dep’t of Pub. HHS, 2011 MT 110, ¶ 21, 360 Mont. 396, 255 P.3d 1229; Stevens v. Novartis Pharms. Corp., 2010 MT 282, ¶ 24, 358 Mont. 474, 247 P.3d 244.
DISCUSSION
¶25 Did the District Court abuse its discretion in denying Landowners’ motion to dismiss Williams’ complaint for failure to join them as necessary parties under the Montana Uniform Declaratory Judgments Act?
¶26 When Williams filed his initial complaint on May 14, 2010, seeking declaratory relief pursuant to the UDJA, he did not include Landowners as parties to the action. Landowners claim that they were “necessary parties” to Williams’ action because their interests as protesting property owners would be affected by the District Court’s declaration as to the constitutionality of § 76-2-205(6), MCA. *364 Landowners moved to intervene on May 24, 2010, and the District Court granted Landowners’ motion on May 28, 2010. However, by the time Landowners were allowed to intervene, the District Court had already granted Williams’ request for a preliminary injunction.
¶27 On June 3,2010, Landowners filed a M. R. Civ. P. 12(b)(7) motion to dismiss premised on Williams’ failure to join all of the proper parties. Landowners asserted that both M. R. Civ. P. 19 and the UDJA required that Landowners must be included as parties to Williams’ action. The District Court discussed the application of M. R. Civ. P. 19(a)(1), and determined that ‘Tajlthough Intervenors [Landowners] may have an interest in the instant action, their interest is not one that is within the provisions of Rule 19(a)(1).” The District Court reasoned that Williams’ action was a constitutional challenge to the protest provision of a zoning statute and not a property rights dispute. After concluding that it was not mandatory under M. R. Civ. P. 19(a)(1) to join Landowners, the District Court denied Landowners’ motion to dismiss. The District Court noted that “as property owners with an interest in the constitutionality of the zoning statute at issue, Intervenors [Landowners] were properly granted leave to intervene.” ¶28 While the District Court’s decision on Landowners’ motion to dismiss addressed the matter in the context of M. R. Civ. P. 19, it is completely bereft of any analysis of necessary parties under the UDJA. On appeal, Landowners do not challenge the District Court’s conclusions concerning M. R. Civ. P. 19. Instead, they assert that the District Court abused its discretion by failing to consider that Landowners were necessary parties under the UDJA.
¶29 Section 27-8-301, MCA, governs “necessary parties” to an action brought under the UDJA and provides as follows:
When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.
A court’s decision as to whether a non-party must be included in a matter depends on the facts and circumstances of the particular case in question. John Alexander Ethen Trust Agreement v. River Res. Outfitters, LLC, 2011 MT 143, ¶ 49, 361 Mont. 57, 256 P.3d 913.
¶30 John Alexander Ethen Trust Agreement involved a boundary dispute between neighboring property owners. One of the property owners attempted to invalidate the trial court’s decision concerning the location of the property boundary for failure to join an indispensable *365 party. John Alexander Ethen Trust Agreement, ¶ 22. The property owner argued that other neighboring landowners who owned parcels along the same creek and whose property was divided by the same survey were indispensible. John Alexander Ethen Trust Agreement, ¶ 52. This Court disagreed, reasoning that while the other neighboring landowners had an interest in the interpretation of the surveys, they held no legal interest in the disputed acreage at issue in the case. John Alexander Ethen Trust Agreement, ¶ 52. Since the only boundary in dispute in the case was between the two parties to the action and the decision would not determine the rights of any other neighboring landowners, we held that the trial court did not abuse its discretion in declining to join the neighboring landowners. John Alexander Ethen Trust Agreement, ¶ 52.
¶31 Williams commenced the action in District Court in direct response to Landowners’ use of the protest provision to prevent Commissioners from adopting the proposed North Lolo Rural Special Zoning District. As the parties who exercised their rights under the protest provision, Landowners had a clear interest in the outcome of the District Court’s declaration concerning the constitutionality of § 76-2-205(6), MCA. If the District Court declared the protest provision unconstitutional, Landowners’ property would be zoned according to the proposed North Lolo Rural Special Zoning District, and Landowners’ use of their property would be limited. On the other hand, if the District Court declared that the protest provision was constitutional, Landowners’ property would remain unzoned and they would be permitted to develop their property free of regulation. Unlike in John Alexander Ethen Trust Agreement, Landowners’ legal rights and interests as protesting property owners were directly at issue in Williams’ lawsuit.
¶32 The absence of Landowners from Williams’ lawsuit created additional problems likely to result in prejudice. The Commissioners, as the defendants in Williams’ lawsuit, agreed with Williams that §76-2-205(6), MCA, was unconstitutional. The Attorney General was given notice of the constitutional challenge to § 76-2-205(6), MCA, but declined to defend the statute.[3] Accordingly, before Landowners *366 intervened, all of the parties before the District Court were of the same mind that the protest provision was unconstitutional. Allowing the lawsuit to continue in the absence of Landowners and without the presence any other party similarly situated would likely have prejudiced Landowners.
¶33 Although we agree with Landowners that they were a necessary party under §27-8-301, MCA, we do not agree with Landowners that the proper remedy for Williams’ failure to name them as a party in his initial complaint is dismissal. M. R. Civ. P. 19 is instructive in determining the appropriate-remedy when a required party is absent. Rule 19(a)(2) states that “[i]f a person has not been joined as required, the court must order that the person be made a party.”
¶34 Here, the District Court granted Landowners’ motion to intervene in the early stages of the litigation. Landowners fully participated in all substantive briefing regarding the constitutionality of the protest provision. Even though the District Court granted a preliminary injunction shortly before Landowners intervened, the preliminary injunction and the Commissioners’ adoption of the North Lolo Rural Special Zoning District were subject to the District Court’s later determination of the constitutionality of the protest provision. Granting the preliminary injunction was necessary to prevent the issue of the constitutionality of §76-2-205(6), MCA, from becoming moot. Without the preliminary injunction, Landowners could have built gravel pits in the interim while the case was pending before the District Court, thus rendering the question regarding the validity of the protest provision moot.
¶35 This Court’s adherence to the harmless error doctrine requires that ‘[a]t every stage of the proceeding, the court must disregard all errors and defects that do not affect any party’s substantial rights.”M. R. Civ. P. 61; see e.g. Liberty Cove, ¶ 21. Under the circumstances of this case, we find it unnecessary to dismiss the action in its entirety because the Landowners cannot demonstrate that their substantial rights were harmed in any way by Williams’ failure to include them as a party in his original complaint. Landowners’ timely intervention remedied Williams’ error of failing to initially include them as necessary parties under the UDJA. We therefore conclude that the District Court did not abuse its discretion in denying Landowners’ motion to dismiss Williams’ complaint.
¶36 Did the District Court err in determining that §76-2-205(6), MCA, was an unconstitutional delegation of legislative power?
*367 ¶37 In Montana, the establishment of local zoning districts is governed by statute. A local zoning district can be created in two different ways: (1) by citizen petition to the board of county commissioners under §76-2-101, MCA, known as Tart 1 zoning,” or (2) directly by the board of county commissioners under §76-2-201, MCA, referred to as Tart 2 zoning.” See Helena Sand & Gravel, Inc. v. Lewis & Clark County Planning & Zoning Comm’n, 2012 MT 272, ¶ 6, 367 Mont. 130, 290 P.3d 691. This case involves Part 2 zoning pursuant to § 76-2-201, MCA.
¶38 Section 76-2-201, MCA, provides that a board of county commissioners may adopt zoning regulations ‘If]or the purpose of promoting the public health, safety, morals, and general welfare.”The board of county commissioners is authorized by §76-2-202, MCA, to “regulate the erection, construction, reconstruction, alteration, repair, location, or use of buildings or structures or the use of land” in zoning districts. In adopting zoning regulations, the board must consider reasonable provision of adequate light and air, effects of motorized and non-motorized transportation systems, compatible urban growth in the vicinity of cities and towns, the character of the district and its peculiar suitability for particular uses, conserving the value of buildings, and encouraging the most appropriate use of land. Section 76-2-203(2), MCA. Zoning regulations must be made in accordance with relevant growth policies and must, as nearly as possible, be compatible with the zoning ordinances of nearby municipalities. Section 76-2-203, MCA. The county and city-county planning boards serve an advisory role to the board of commissioners by recommending boundaries and appropriate regulations for the zoning district. Section 76-2-204, MCA.
¶39 The procedure for establishing district boundaries and adopting or revising zoning regulations, which includes notice and public hearing requirements, is set forth in §76-2-205, MCA. Section 76-2-205(6), MCA, contains a protest provision that provides two ways for real property owners within the proposed zoning district to prevent the board of county commissioners from adopting zoning regulations. The protest provision reads as follows:
Within 30 days after the expiration of the protest period, the board of county commissioners may in its discretion adopt the resolution creating the zoning district or establishing the zoning regulations for the district. However, if 40% of the real property owners within the district whose names appear on the last- *368 completed assessment roll or if real property owners representing 50% of the titled property ownership whose property is taxed for agricultural purposes under 15-7-202 or whose property is taxed as forest land under Title 15, chapter 44, part 1, have protested the establishment of the district or adoption of the regulations, the board of county commissioners may not adopt the resolution and a further zoning resolution may not be proposed for the district for a period of 1 year.
Section 76-2-205(6), MCA. At issue in this case is the constitutionality of the provision allowing agricultural and forest landowners representing 50 percent of the titled agricultural or forest land within the district to block a board of county commissioners from adopting a zoning resolution and prevent another from being proposed for one year.
¶40 Section 76-2-205, MCA, was originally adopted in 1963. At that time, the statute contained the language that allowed 40 percent of property owners in a district to protest the establishment of a zoning district or imposition of zoning regulations and effectively prevent the board of county commissioners from taking any action. However, the original version of the statute did not contain the protest provision concerning agricultural and forest land property owners. In 1995, the Legislature debated and ultimately adopted the protest provision at issue in this case. Based on the legislative history, Landowners note that the protest provision was enacted to give large agricultural and forest land property owners more power in the zoning process, and the ability to protect their property interests from unwanted regulation by residential property owners who often greatly outnumber agricultural and forest land property owners in a district.
¶41 Courts have long recognized zoning as a valid form of regulation to promote public health, safety, and welfare. In Freeman v. Board of Adjustment, 97 Mont. 342, 351, 34 P.2d 534, 536 (1934), this Court noted that when zoning ordinances were first enacted, they were often challenged as unconstitutionally depriving property owners of liberty and property without due process of law, or attacked as a violation of equal protection rights. Back in 1934, the Court recognized that the “modern trend” nationwide was to uphold the validity of such ordinances and the statutes that authorize them. Freeman, 97 Mont. at 351, 34 P.2d at 537. The Court went on to explain that zoning statutes and ordinances are “generally sustained upon the theory that they constitute a valid exercise of the police power; that is to say, they *369 have a substantial bearing upon the public health, safety, morals and general welfare of a community.” Freeman, 97 Mont. at 352, 34 P.2d at 537 (citing Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S. Ct. 114 (1926)).
¶42 One important way that zoning promotes public health, safety, and the general welfare of a community is by separating incompatible land uses, such as industrial and residential. See Euclid, 272 U.S. at 394, 47 S. Ct. at 120. In Montana, gravel and sand mining operations present a common example of this conflict between contrary land uses. The State does not require permitting for certain categories of gravel pits, so counties must rely on zoning to protect residential areas from the industrial impacts often associated with gravel and sand mining operations. See §82-4-431, MCA (providing limited exemptions from state permitting requirements for mining, processing and reclamation); see also § 76-2-209, MCA (authorizing reasonable conditions or prohibitions against sand and gravel mining operations in areas zoned as residential, and reasonable conditions on operations in areas not zoned residential). This Court has decided numerous zoning cases in recent years concerning gravel and sand mining operations. See e.g. Helena Sand & Gravel; Gateway Opencut Mining Action Group v. Bd. of County Comm’rs, 2011 MT 198, 361 Mont. 398, 260 P.3d 133; Liberty Cove; Beasley v. Flathead County Bd. of Adjustments; 2009 MT 120, 350 Mont. 171, 205 P.3d 812; Flathead Citizens for Quality Growth, Inc. v. Flathead County Bd. of Adjustment, 2008 MT 1, 341 Mont. 1, 175 P.3d 282; Merlin Myers Revocable Trust v. Yellowstone County, 2002 MT 201, 311 Mont. 194, 53 P.3d 1268.
¶43 The instant case is not the first time that the constitutionality of §76-2-205(6), MCA, has been questioned before this Court. In Gateway Opencut Mining Action Group, an advocacy group challenged the protest provision as an unconstitutional delegation of legislative authority to private parties. However, this Court did not reach the merits of the constitutional challenge. We determined that the proposed zoning regulations failed because the board of county commissioners did not act within the statutorily-prescribed deadlines. Gateway Opencut Mining Action Group, ¶ 24. Therefore, we held that the constitutional question presented to the Court was moot. Gateway Opencut Mining Action Group, ¶ 25.
¶44 In Bacus v. Lake County, 138 Mont. 69, 354 P.2d 1056 (1960), this Court set forth the standard for a delegation of legislative power as *370 follows:
The law-making power may not be granted to an administrative body to be exercised under the guise of administrative discretion. Accordingly, in delegating powers to an administrative body with respect to the administration of statutes, the legislature must ordinarily prescribe a policy, standard, or rule for their guidance and must not vest them with an arbitrary and uncontrolled discretion with regard thereto, and a statute or ordinance which is deficient in this respect is invalid.
Bacus, 138 Mont. at 78, 354 P.2d at 1061 (quoting 73 C.J.S. Public Administrative Bodies & Procedure §29).
¶45 In the context of zoning, this Court has previously held that a lawful delegation of legislative authority “must contain standards or guidelines” to inform the propriety of the exercise of that power. Shannon v. City of Forsyth, 205 Mont. 111, 114, 666 P.2d 750, 752 (1983). When no standards or guidelines are present, the exercise of the delegated power may result in “arbitrary and capricious” actions, “dependent wholly on the will and whim” of others. Shannon, 205 Mont. at 115, 666 P.2d at 752. The existence of an appellate body with the power to consider exceptional cases is essential to the proper exercise of police power. Shannon, 205 Mont. at 115, 666 P.2d at 752. Unlawful delegations of legislative authority run afoul of the due process guarantees of the Fourteenth Amendment to the United States Constitution and Article II, Section 17 of the Montana Constitution. Shannon, 205 Mont. at 114, 666 P.2d at 752.
¶46 In Shannon, mobile home owners filed a petition with the City of Forsyth seeking a waiver to locate a mobile home in a zoning district which prohibits mobile homes. Shannon, 205 Mont. at 112, 666 P.2d at 751. The local ordinance required a successful petition for a variance to include the signatures of at least 80 percent of the landowners residing within 300 feet of the proposed location of the mobile home and also required the signatures of all adjoininglandowners. Shannon, 205 Mont. at 112, 666 P.2d at 751. We held that the ordinance was unconstitutional as an unlawful delegation of legislative authority and police power. Shannon, 205 Mont. at 115, 666 P.2d at 753. We reasoned that the ordinance provided no standard whatsoever by which to judge the neighbors’ consents. Shannon, 205 Mont. at 115, 666 P.2d at 752. We determined that the ordinance was arbitrary and capricious because the negative vote by a single adjoining landowner could defeat the petition. Shannon, 205 Mont. at 115, 666 P.2d at 752. *371 Additionally, we concluded that the ordinance represented an unwarranted application of police power because the City Council had no power to determine whether a variance should be granted unless a petition was submitted containing all of the required signatures. Shannon, 205 Mont. at 115, 666 P.2d at 752-53.
¶47 This Court has struck down several other statutes and ordinances outside the context of zoning as unconstitutional delegations of legislative authority. See e.g. In the Petition to Transfer Territory, 2000 MT 342, 303 Mont. 204, 15 P.3d 447 (holding that a statute giving a superintendent the authority to grant or deny petitions to transfer territory among school districts was an unconstitutional delegation of legislative power because the superintendent’s broad discretion was “unchecked by any standard, policy, or rule of decision”); Ingraham v. Champion Int’l, 243 Mont. 42, 793 P.2d 769 (1990) (deeming a workers’ compensation statute an unconstitutional delegation of legislative power because it granted the insurer “absolute discretion” as to what terms, under what circumstances, and in what amounts a lump-sum conversion payment could occur); In the Matter of Savings & Loan Activities, 182 Mont. 361, 597 P.2d 84 (1979) (declaring a statute granting the Department of Business Regulation the power to approve or disapprove applications for the merger of savings and loan associations was an unconstitutional delegation of legislative power because it lacked guidelines or substantive criteria); Douglas v. Judge, 174 Mont. 32, 568 P.2d 530 (1977) (holding unconstitutional a statute authorizing the Department of Natural Resources and Conservation to make loans to farmers and ranchers who proposed “worthwhile” renewable resource development projects because the statute lacked adequate parameters).
¶48 The U.S. Supreme Court has similarly struck down laws as unconstitutional delegations of legislative power when the law “creates no standard by which the power thus given is to be exercised.” Eubank v. Richmond, 226 U.S. 137, 143-44, 33 S. Ct. 76, 77 (1912). In Eubank, a property owner challenged a city ordinance that required municipal authorities to establish building setback lines when such action was requested by two-thirds of the property owners on a street. Eubank, 226 U.S. at 141, 33 S. Ct. at 76. The Court determined that the ordinance, by “conferring the power on some property holders to virtually control and dispose of the property rights of others,” unlawfully empowered To]ne set of owners [to] determine not only the extent of use but the kind of use which another set of owners may *372 make of their property.” Eubank, 226 U.S. at 143, 33 S. Ct. at 77. In fact, under the ordinance, a single landowner who owned two-thirds of a city block could assert her will against the remaining property owners on the block solely for her own interest or even capriciously, without any standard to guide the exercise of her power. Eubank, 226 U.S. at 144, 33 S. Ct. at 77. The ordinance left the Court questioning, ‘In what way is the public safety, convenience or welfare served by conferring such power?” Eubank, 226 U.S. at 143, 33 S. Ct. at 77. A similar result followed in Washington ex rel. Seattle Title Trust Co. v. Roberge, 278 U.S. 116, 49 S. Ct. 50 (1928), in which the Court concluded that an ordinance requiring the consent of two-thirds of neighboring property owners to allow a facility for the elderly to expand was unconstitutional because it conferred absolute discretion over whether to issue a permit to property owners without prescribing any standards or rules or providing for review of their decision.
¶49 In reaching its decision that §76-2-205(6), MCA, represented an unconstitutional delegation of legislative power, the District Court relied heavily on an analogous decision from the South Dakota Supreme Court, Cary v. City of Rapid City, 559 N.W.2d 891 (S.D. 1997). Cary petitioned the city to rezone her property from a general agricultural classification to medium density residential. Cary, 559 N.W.2d at 892. The city granted Cary’s request, but prior to the changes going into effect, certain neighboring property owners filed a written protest to the rezoning pursuant to a statutory protest provision. Cary, 559 N.W.2d at 892. The statute provided that if 40 percent of the property owners within and around the district filed written protests against the proposed zoning, it would fail. Cary, 559 N.W.2d at 893. Cary challenged the statute as an unconstitutional delegation of legislative power. Cary, 559 N.W.2d at 895.
¶50 Relying in part on the Montana decisions Shannon and Freeman, the South Dakota Supreme Court determined that the protest provision was unconstitutional. Cary, 559 N.W.2d at 895-96. The Court reasoned that the protest provision did not provide the necessary guidelines or standards for a protest and as a result, it allowed the use of a person’s property “to be held hostage by the will and whims of neighboring landowners” without reason or justification. Cary, 559 N.W.2d at 895. As the Court observed, “[s]uch a standardless protest statute allows for unequal treatment under the law and is in clear contradiction of the protections of the due process clause of the Fourteenth Amendment.” Cary, 559 N.W.2d at 895. Moreover, the *373 Court determined that the absence of a legislative bypass or review provision impermissibly allowed a potentially small number of neighboring property owners to make the ultimate determination of the public’s best interest. Cary, 559 N.W.2d at 895-96.
¶51 We agree with the District Court that the protest provision in § 76-2-205(6), MCA, which allows property owners representing 50 percent of the agricultural and forest land in a district to block zoning proposals, is an unconstitutional delegation of legislative power. First, the protest provision provides no standards or guidelines to inform the exercise of the delegated power. Second, the protest provision contains no legislative bypass.
¶52 Without any standards or guidelines for the exercise of the delegated power, the protest provision of §76-2-205(6), MCA, contains the same constitutional infirmities as discussed in Shannon, Eubank, and Cary. The protest provision allows a minority of landowners, or even one landowner, to strike down proposed zoning regulations without any justification or for no reason at all. There is no requirement that the protesting landowners consider public health, safety, or the general welfare of the other residents of the district when preventing the board of county commissioners from implementing zoning regulations. As a result, agricultural and forest landowners can exercise their unfettered power in a proper manner, or in an arbitrary and capricious manner, making zoning decisions dependent wholly on their will and whim.
¶53 The protest provision also lacks provision for review by a legislative body with the power to consider exceptional cases, which was noted as essential to the proper exercise of police power in Shannon and Cary. Without a legislative bypass provision, a small number of agricultural or forest landowners, or even a single landowner, is granted absolute discretion to make the ultimate determination concerning the public’s best interests with no opportunity for review. Not only does the statute lack a provision allowing a legislative body to take action notwithstanding the protest, it actually prohibits the board of county commissioners from even proposing an alternative zoning resolution for a period of one year. In contrast, Montana’s Municipal Zoning Act contains an example of a proper legislative bypass. Section 76-2-305, MCA, allows a city or town council or legislative body of a municipality to override a citizen protest to a zoning proposal by a two-thirds vote. When the legislative body retains the authority to make the final decision on a zoning *374 proposal, courts have often determined that the statute or ordinance falls within constitutional bounds. See e.g. Hope v. Gainesville, 355 So. 2d 1172 (Fla. 1977); Trumper v. Quincy, 264 N.E.2d 689 (Mass. 1970). Section 76-2-205(6), MCA, unlawfully vests this final decision-making power in private individuals.
¶54 Therefore, we conclude that the District Court did not err in determining that the protest provision at issue in this case represents an unlawful delegation of legislative power.
¶55 In his Dissent, Justice Rice touts the rights of the Landowners to acquire and protect their land as reason for upholding the protest provision. The legislative history of §76-2-205(6), MCA, reveals that the protest provision was enacted to protect agricultural production and the traditional uses of forest and agricultural land. In fact, as Justice Rice acknowledges, the Legislature enacted another statute the same year that the protest provision was adopted, expressly declaring the Legislature’s intent to protect agricultural property from governmental zoning:
76-2-901. Agricultural activities4egislative finding and purpose. (1) The legislature finds that agricultural lands and the ability and right of farmers and ranchers to produce a safe, abundant, and secure food and fiber supply have been the basis of economic growth and development of all sectors of Montana’s economy. In order to sustain Montana’s valuable farm economy and land bases associated with it, farmers and ranchers must be encouraged and have the right to stay in farming.
(2) It is therefore the intent of the legislature to protect agricultural activities from governmental zoning and nuisance ordinances.
The goals of the Legislature are surely salutary. It bears noting, however, that Landowners were not utilizing the protest provision to preserve their ability to “produce a safe, abundant, and secure food and fiber supply” or protect their “right to stay in farming.” Rather, Landowners wielded the power of the protest provision to block regulations that would limit their ability to transform their agricultural and forest land into a large industrial gravel pit. Thus, Justice Rice’s invocation of “safeguards for agricultural property” as a basis for upholding the protest provision rings somewhat hollow.
¶56 While Justice Rice expresses concern for the property rights of Landowners, his Dissent utterly ignores the property rights of the remaining property owners in the zoning district. These neighboring *375 property owners also have a constitutional right to possess their property and protect it from harm. When zoning regulations are designed to ‘have a real and substantial bearing upon the public health, safety, morals and general welfare of a community,” such regulations do not unduly interfere with the fundamental nature of private property ownership and can in fact bolster the use, enjoyment, and value of property. Freeman, 97 Mont. at 355, 34 P.2d at 538.
¶57 Justice Rice attempts to distinguish the instant case by arguing that ‘Landowners held only the ability to protect and prevent their own land from being zoned, not to approve or impose conditions on their neighbors’ property.” Dissent, ¶ 78. We disagree with this characterization of the protest provision. The protest power of §76-2-205(6), MCA, granted Landowners the ability to prevent any zoning regulations from being adopted for the entire North Lolo Rural Special Zoning District, regardless of how or whether the proposed regulations might affect their own land. The protest provision did not merely give Landowners the ability to gain a variance for their own property; it allowed them to block an entire zoning plan from being implemented. Moreover, Landowners could presumably invoke the protest provision year after year so as to indefinitely block zoning. Contrary to the assumption implicit in ¶ 79 of Justice Rice’s Dissent, nothing in the protest provision prevents Landowners from engaging in successive protests whenever the board might again attempt to establish zoning regulations.
¶58 We now turn to Justice McKinnon’s Dissent. Contrary to the plain language of the statute, Justice McKinnon argues that §76-2-205(6), MCA, functions as a “condition precedent to zoning.”This is simply not the case. This Court has previously defined a condition precedent as “one which is to be performed before some right or obligation dependent thereon accrues.” Holter Lakeshores Homeowners Ass’n v. Thurston, 2009 MT 146, ¶ 22, 350 Mont. 362, 207 P.3d 334. Section 76-2-205, MCA, contains no provision allowing, let alone requiring, property owners to vote to approve zoning regulations before a board of county commissioners may act. This mischaracterization of the nature of the protest provision derails much of the analysis that follows in Justice McKinnon’s Dissent.
¶59 Contrary to the impression left by the Dissents, the sky is not falling. We have concluded that the statute as written unlawfully vests private individuals with legislative power. It bears repeating that appropriate legislative bypass language has been employed over the *376 last century around the country to alleviate similar concerns. The Montana Legislature is certainly free to consider whether and how to reenact the protest provision so that it will pass constitutional muster.
¶60 For these reasons, we respectfully reject the arguments presented by the Dissents.
¶61 Did the District Court err in determining that §76-2-205(6), MCA, was an unconstitutional violation of the right to equal protection and the right to suffrage?
¶62 Based on our resolution of Issue 2 and our determination that the protest provision in question constitutes an unconstitutional delegation of legislative power, we decline to address Landowners’ equal protection and right to suffrage constitutional challenges.
¶63 Did the District Court err when it ruled that §76-2-205(6), MCA, was severable from the remainder of the statute ?
¶64 We must now consider whether the protest provision of §76-2-205(6), MCA, is severable from the remainder of the statute. This Court attempts to construe statutes in a manner that avoids unconstitutional interpretation whenever possible. State v. Samples, 2008 MT 416, ¶ 14, 347 Mont. 292, 198 P.3d 803; City of Great Falls v. Morris, 2006 MT 93, ¶ 19, 332 Mont. 85, 134 P.3d 692. If a law contains both constitutional and unconstitutional provisions, we examine the legislation to determine if there is a severability clause. Finke, ¶ 25; Sheehy v. Public Employees Retirement Div., 262 Mont. 129, 141, 864 P.2d 762, 770 (1993). The inclusion of a severability clause in a statute is an indication that the drafters desired a policy of judicial severability to apply to the enactment. Finke, ¶ 26; Sheehy, 262 Mont. at 141, 864 P.2d at 770. In the absence of a severability clause, this Court “must determine whether the unconstitutional provisions are necessary for the integrity of the law or were an inducement for its enactment.” Finke, ¶ 25; Sheehy, 262 Mont. at 141, 864 P.2d at 770. When unconstitutional provisions are severed, the remainder of the statute must be complete in itself and capable of being executed in accordance with the apparent legislative intent. Finke, ¶ 26; Sheehy, 262 Mont. at 141, 864 P.2d at 770. Though “the presumption is against the mutilation of a statute,” Sheehy, 262 Mont. at 142, 864 P.2d at 770, if removing the offending provisions will not frustrate the purpose or disrupt the integrity of the law, we will strike only those provisions of the statute that are unconstitutional. Mont. Auto Ass’n v. Greely, 193 Mont. 378, 399, 632 P.2d 300, 311 (1981).
¶65 The District Court began its analysis by determining that §76-2- *377 205(6), MCA, does not contain a severability clause. Next, the District Court reviewed the legislative history of §76-2-205, MCA, and noted that there was very little discussion in 1963 when the statute was first enacted concerning the 40 percent protest provision. Since the protest provision for 50 percent of agricultural and forest landowners was not added until 1995, the District Court concluded that this protest provision was neither necessary for the integrity of the law nor did it induce the statute’s enactment. The District Court determined that the protest provision contained in §76-2-205(6), MCA, was severable from the statute.
¶66 Landowners argue that if the protest provision is found to be unconstitutional, this Court must strike down §76-2-205, MCA, in its entirety. Landowners argue that the statute contained a severability clause until 1995, and the subsequent removal of the severability clause should be viewed as evidence that the Legislature did not intend for the statute to be severable.
¶67 Our review of the history of §76-2-205, MCA, demonstrates that when the statute was enacted in 1963, it did in fact contain a severability clause. 1963 Mont. Laws 782, ch. 246, § 11. The severability clause read as follows:
The provisions of this act shall be severable and, if any of its sections, provisions, exceptions, clauses or parts be held unconstitutional or void, the remainder of this act shall continue in full force and effect.
1963 Mont. Laws 782, ch. 246, §11. In 1971, the Legislature amended the statute to clarify its language. 1971 Mont. Laws 1176, ch. 273, §19. The 1971 amendments did not substantively alter §76-2-205, MCA. The Legislature once again expressed its intent that the statute be severable by including the following severability clause:
It is the intent of the legislative assembly that if a part of this act is invalid, all valid parts that are severable from the invalid part remain in effect. If part of this act is invalid in one or more of its applications, the part remains in effect in all valid applications that are severable from the invalid applications.
1971 Mont. Laws 1176, ch. 273, §21.
¶68 According to the Montana Bill Drafting Manual published by the Montana Legislative Services Division, severability clauses are not codified but are published in the annotations. In 1977, the statute at issue was identified as §16-4705, R.C.M., and was located in Title 16: Counties, Chapter 47: Zoning Districts. At the end of this chapter, the *378 code contained an annotation noting the severability clause. However, in 1978, the code was renumbered and reorganized. The statute at issue was renumbered as §76-2-205, MCA, and moved to Title 76: Land Resources and Use, Chapter 2: Planning and Zoning, Part 2: County Zoning. The annotation noting the existence of a severability clause was removed from the code, but the legislative history does not demonstrate that the Legislature took any specific action to remove the severability clause. Severability was not mentioned in later revisions of the statute in 1995 and 2009. The current version of §76-2-205, MCA, does not include an annotation noting the existence of a severability clause.
¶69 Even given the checkered background and unclear history of §76-2-205, MCA, several facts are apparent. First, when the Legislature enacted the statute in 1963, it expressly included a severability clause. The original version of the statute contained the protest provision allowing 40 percent of property owners within the district to block a zoning proposal, but it did not include the protest provision concerning agricultural and forest landowners. The protest provision applicable to agricultural and forest landowners was not enacted until 32 years after the original statute was approved. Since the statute existed for 32 years without the protest provision at issue in this case, we reject Landowners’ argument that the protest provision was necessary for the integrity of the law or served as an inducement for its enactment. Furthermore, the Legislature never took any action at any point in the statute’s history that expressly demonstrated its intent to remove the severability clause.
¶70 When the protest provision is severed from the statute, the remaining provisions are complete and capable of fulfilling the legislative intent underlying the statute. The stated purpose of county zoning is to promote ‘the public health, safety, morals, and general welfare.” See §76-2-201, MCA. In the absence of the protest provision, the purposes of the statute can still be achieved. The process set forth in §76-2-205, MCA, adequately protects the rights of property owners within the district by requiring notice of any proposed changes and by allowing public comment and participation. Under these circumstances, the District Court correctly determined that the protest provision at issue is severable from §76-2-205, MCA.
CONCLUSION
¶71 For the foregoing reasons, we affirm the District Court’s grant of *379 summary judgment to Williams and Commissioners. We hold that the protest provision in § 76-2-205(6), MCA, is an unconstitutional delegation of legislative power. Accordingly, we strike the protest provision that allows agricultural and forest property owners representing 50 percent of such land within a district to block the board of county commissioners from adopting a zoning proposal and prohibiting the board from proposing further zoning regulations for one year. Since the protest provision utilized by Landowners was unconstitutional and thereby ineffective, we uphold the Commissioners’ adoption of the North Lolo Rural Special Zoning District.
CHIEF JUSTICE McGRATH, JUSTICES WHEAT, BAKER and MORRIS concur.

 Liberty Cove challenged the interim zoning on three grounds: (1) Whether the District Court erred in concluding there was an emergency to justify interim zoning; (2) Whether the District Court erred in concluding that Missoula County gave proper notice before adopting interim zoning; and (3) Whether the District Court erred in concluding that the interim zoning adopted by Missoula County did not constitute illegal reverse spot zoning. We affirmed the District Court on all three issues and upheld the interim zoning.

 Pour of these five landowners are the Appellants in this case, designated “Landowners.”

 Though the Attorney General declined to participate in 2010 in District Court, the Attorney General did participate by filing an amicus curiae brief on appeal and appeared at oral argument before this Court defending the constitutionality of §76-2-205(6), MCA.